GENERAL ELECTRIC CO. v. BROWER.

(Circuit Court of Appeals, Ninth Circuit.  February 8, 1915.)

No. 2449.

BANKRUPTCY ⊂⊃140—OWNERSHIP OF PROPERTY—SALE OR AGENCY.

By a contract between a manufacturer of incandescent lamps and the A. Company, it was appointed as agent to sell such lamps, and accepted such appointment. The contract further provided that the manufacturer should maintain a stock of lamps in the custody of the agent; that the quantity of lamps and the length of time they should remain in stock should be determined by it; that all the lamps should remain its property until sold; that the proceeds of sales should be held for its benefit; that the agent should return lamps unsold to the manufacturer at any time, if directed; that the agent should sell at prices and on terms fixed by the manufacturer and state on all bills and invoices that it was agent for the manufacturer; and that the agent guaranteed payment for all lamps sold and would pay to the manufacturer each month an amount equal to the sales value of lamps sold, less the agent's compensation, which was to be the difference between the selling prices and the value of the lamps at a discount of 29 per cent. from list prices. *Held*, that there was an agency and not a sale, and, upon the bankruptcy of the agent, the lamps in its possession did not pass to its trustee in bankruptcy, though the contract contained no provision that the agent should keep the proceeds of sales separate and apart from its other money, or that it should turn over the money received to the manufacturer, and though it did provide for payment by the agent of all expenses in the storage, cartage, transportation, handling, and sale of the lamps and all expense incident thereto.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ⊂⊃140.]

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

In the matter of the Andrus-Cushing Lighting Fixture Company, bankrupt. From an order affirming a decision of the referee in favor of C. A. Brower, as trustee in bankruptcy on the claim of title by the General Electric Company to certain property, the Electric Company appeals. Reversed and remanded, with instructions.

On July 8, 1912, the appellant entered into a contract with the Andrus-Cushing Lighting Fixture Company, a corporation, by which it agreed to consign incandescent lamps manufactured by it to the Andrus Company for sale on a commission basis. On August 14, 1913, the Andrus Company was adjudged a bankrupt. At that time it had in its possession lamps which had been consigned under the contract, and which had not been sold. Those lamps were subsequently taken by the trustee in bankruptcy, who claimed the right to hold them for the benefit of creditors. On October 8, 1913, the appellant filed a petition in the bankruptcy proceeding, claiming title to the

lamps. On October 15, 1913, it filed objections to the confirmation of the sale of the lamps by the trustee. Both the petition and the objections came on for hearing before the referee. The trustee contended that, by the contract under which the lamps had been consigned, an actual sale was made, and that, if the sale was not absolute, it was conditional, and therefore void as to creditors because not recorded. The referee sustained the trustee's contention, and the District Court affirmed the referee's decision. From the judgment of that court, the present appeal is taken.

The contract is as follows:

### "Appointment of Agent. Incandescent Lamps.

"The General Electric Company, a New York corporation (hereinafter called the 'manufacturer'), hereby, through the general manager of its Banner Electric Works, at Youngstown, Ohio, appoints Andrus-Cushing Lighting Fixture Co., of Tacoma, Wash. (hereinafter called the 'agent'), an agent to sell for it its Banner incandescent lamps manufactured under United States letters patent, of the types and classes hereinafter specified, upon the terms and subject to the conditions herein set forth, and said agent hereby accepts the appointment, and agrees to comply with said terms and to perform all conditions hereof.

"(1) The agency hereby created shall continue for the period of one year from July 8, 1912, unless sooner terminated as herein provided.

"(2) The manufacturer agrees to maintain in the custody of the agent, to be disposed of as herein provided, a stock of its Banner Gem (metallized filament), Mazda (tungsten) and Tantalum patented incandescent lamps; all of the lamps in such consigned stock shall be and remain the property of the manufacturer until the lamps are sold, and the proceeds of all lamps sold shall be held for the benefit and for the account of the manufacturer until fully accounted for as hereinafter provided. The quantity of lamps and the length of time they shall remain in stock is to be at all times determined by the manufacturer; but its intent is to maintain the stock on an average basis of from 30 to 60 days' supply, as estimated by the agent. All lamps shipped hereunder by or on behalf of the manufacturer either to the agent or upon his request during the continuance of this agency, shall be subject to the same terms, conditions and agreements as if shipped to said stock, whether or not so specified. The agent shall return to the manufacturer, at any time when directed by it, all or any part of the said lamps that have not been sold, and any duly authorized representative of the manufacturer shall have access at all times during business hours to the place or places in which said lamps are stored.

"(3) The agent is hereby authorized (a) to sell to any one lamps from said stock in broken package quantities at broken package prices, and in standard package quantities at standard package prices, and (b) to sell lamps from said stock to any purchaser under standard forms of contract made by the manufacturer and under which the agent may be given, by the manufacturer, written authority to deliver lamps at the prices fixed in said contracts, and (c) to sell, at prices on the same basis as those in standard forms of contract, lamps from said stock to any purchaser, not under contract, for the purchaser's immediate use; but sales under this subdivision (c) may be made only on written permission from the manufacturer first obtained in each instance. All sales shall be made only at such prices and upon such terms as may be established by the manufacturer; the present prices and terms being contained in the schedules presented herewith, which are subject to change on written notice from the manufacturer from time to time.

"Upon all bills and invoices for lamps sold by the agent shall appear the words: 'Agent for Banner Incandescent Lamps of General Electric Company.' The agent has no authority to sell or transfer or in any way dispose of such lamps, except as herein expressly provided, and shall not control, or attempt to control, the prices at which any purchaser shall sell any of such lamps. The due payment to the manufacturer for all sales made hereunder by the agent shall be and hereby is guaranteed by said agent.

"The agent shall conform to the educational and engineering instructions of the manufacturer, and shall advise with and instruct prospective purchasers as to the classes and types of lamps best suited to their several requirements in order to secure a maximum illumination for a minimum expenditure, and shall conduct the business hereunder to the satisfaction of the manufacturer.

"(4) All of the agent's books and records relating to his transactions in connection with the sale and distribution of the manufacturer's lamps shall at all times during business hours be open to the inspection of any duly authorized representative of the manufacturer.

"(5) The agent shall pay all expenses in the storage, cartage, transportation, handling and sale of lamps hereunder, and all expense incident thereto and to the accounting and collection of accounts thus created. The agent shall be allowed, as compensation for the performance of all obligations hereunder, the difference between the amounts received from the sale of the lamps and their value on the basis of a discount of 29 per cent. from list prices as to the time fixed by the manufacturer. The manufacturer agrees that if the agent sells, during the period of this appointment, a quantity of lamps the value of which would entitle him to a higher basis of compensation, as shown in schedules presented herewith, the manufacturer will at once credit the agent with an amount equal to the difference between the compensation he has been receiving and the compensation he then becomes entitled to.

"(6) The agent shall render to the manufacturer, not later than the tenth of every month, a report, on forms provided by the manufacturer, covering his sales of the manufacturer's lamps during the preceding calendar month.

"The agent shall pay over to the manufacturer, not later than the tenth of every month, an amount equal to the total sales value of all lamps sold hereunder, less the compensation due the agent, for which collections have been made by the agent during the preceding calendar month, and a further amount equal to the total sales value, less the compensation due the agent, on all lamps sold by the agent to customers whose accounts covering such lamps are, on the first of the month, past due, according to the manufacturer's standard terms of payment.

"If reports are forwarded as provided in this clause, and are accompanied by a remittance covering in full the lamps sold by the agent during the preceding calendar month, whether or not such accounts have been collected, such remittance may be the total sales value of the lamps sold, less the compensation due the agent, and less 5 per cent. of the amount so arrived at, which 5 per cent. shall be allowed as an additional compensation for such payment and service.

"(7) The agent shall, on or before the 15th day of January and July, make and forward to the manufacturer, on forms provided by the manufacturer, a complete itemized report or inventory of all of the manufacturer's lamps on hand at the close of business on the last day of the preceding calendar month, and shall render a similar report within 15 days after the termination or expiration of this appointment with reference to all such lamps on hand at the date of such expiration or termination. At the time for rendering each such report, the agent shall pay to the manufacturer the value of all lamps lost from the aforesaid stock or damaged, on the basis of list prices, less a discount of 29 per cent.

"(8) The agency hereby created may be terminated by notice in writing to the agent in the event that the agent shall be or become insolvent or in the event of a breach by the agent of any of the terms or conditions of this appointment. The expiration or termination of this agency for any reason shall be without prejudice to the rights of the manufacturer against the agent, and immediately upon any such expiration or termination the agent shall deliver to the manufacturer all lamps consigned hereunder and that remain unsold and shall fully perform all obligations of the agent that then remain unfulfilled.

"This appointment is hereby signed for the General Electric Company, the manufacturer, by the general manager of its Banner Electric Works or his

duly authorized representative located in the sales office of its said works at Youngstown, Ohio.

"[Signed]                                    N. L. Norris,
                                "General Manager Banner Electric Works.
"Accepted: [Signed]  Andrus-Cushing Lighting Fixture Co.,
                                    "F. L. Cushing, Tr., Agent."

It was stipulated between the parties that in pursuance of said contract, and in accordance with its terms, the lamps in controversy were delivered by the appellant to the bankrupt, and that they were of the value of $600; that the bankrupt paid all expenses and storage, taxes, insurance, cartage, transportation, handling, and sale of all the lamps delivered to it in accordance with the contract; that the contract was not placed of record; that the lamps were not kept separate and apart from other stock of the bankrupt, except that they were kept together on shelves in one place, and in boxes marked "Banner Electric Company"; that, prior to the date of the contract, one Akroyd was a general agent of the appellant in Tacoma and that vicinity; that, after the execution of the contract, he became a stockholder and officer of the bankrupt, with the knowledge and consent of the appellant, but on condition that the bankrupt should have no interest in Akroyd's agency or the. emoluments thereof, which condition was observed by all the parties; that Akroyd was secretary and treasurer and a stockholder in the bankrupt, and at the same time the agent and representative in Tacoma of the appellant; that this double relation was known to and acquiesced in by both the appellant and the bankrupt; that Akroyd knew that the salaries of the officers of the bankrupt were in arrears; and that that company was embarrassed and unable to meet its various obligations, but that the appellant, knowing these things through its agent Akroyd, took no steps to terminate the contract. The contract by its terms expired July 8, 1913. From that date to the date of the bankruptcy, no change was made in the manner of conducting the business of the bankrupt or the relation between the appellant and the bankrupt.

Frank H. Kelley and Ralph Woods, both of Tacoma, Wash., Charles Neave and Edwards H. Childs, both of New York City, and John M. Gearin, of Portland, Or., for appellant.

Walter M. Harvey and G. C. Nolte, both of Tacoma, Wash., for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). It is the contention of the appellee that where goods are delivered by a manufacturer to a seller, and the latter is allowed to place them with his stock of goods, and sell and dispose of them in the ordinary course of business, to manage and control them as other goods, and where he pays all the taxes, cartage, storehouse charges, and all other expenses in connection therewith, and agrees to pay for such goods so disposed of, and there is neither an agreement to return the goods nor an agreement to account for the proceeds of the sale of goods as such, there is no bailment. To sustain that contention, the case particularly relied upon is In re Penny & Anderson (D. C.) 176 Fed. 141. That was a case in which the claimants had delivered to the bankrupts, who were conducting a restaurant, a stock of wines and liquors under an agreement called a "memorandum of consignment," which contained an invoice of the liquors and the prices thereof, and provided that they should be considered as delivered on consignment, and should remain the property of the claimants until the full in-

debtedness of the bankrupts should be paid. There was no restriction on the sale of the liquors by the bankrupts, as to price or otherwise, and no provision respecting the disposition of the proceeds. It was held that the transaction was not a consignment but a sale; the court ruling that the transaction did not create the relation of principal and factor. That conclusion was based upon the fact that the invoice accompanying the goods contained the words "Sold to Messrs. Penny & Anderson, terms on consignment," and gave the price of each article of the consignment, and the fact that the debtors were permitted to sell and dispose of the goods as they saw fit, and at any price and terms, for consumption on the premises, as required in their business, and that the agreement was silent as to the disposition of the proceeds, and recognized only an indebtedness to be paid before the title vested in the consignees.

Substantially different is the contract in the case at bar. To ascertain the intention of that contract, all of its terms should be considered in their relation one to another. The instrument is entitled "Appointment of Agent." It makes the Andrus Company "agent to sell," and the agent expressly accepts the appointment. It provides that the manufacturer shall maintain a stock of lamps in the custody of the agent; that the quantity of lamps and the length of time they shall remain in stock shall be determined by the manufacturer; that all the lamps shall be and remain the property of the manufacturer until sold; that the proceeds of all lamps sold shall be held for the benefit and for the account of the manufacturer; that the agent shall return to the manufacturer at any time, if directed, any and all lamps unsold. The agent is required to sell at prices and on terms fixed by the manufacturer, and on all bills and invoices for lamps sold he is required to state that he sells as agent. The agent guarantees to the manufacturer that all lamps sold by it will be paid for. These provisions, so far as they go, all clearly and unequivocally mark the contract as a contract strictly of agency.

We will briefly consider the provisions therein that are said to indicate a contrary intention. Those provisions are the agent's assumption of liability for loss, and for the payment of certain expenses, and for insurance. Such provisions do not change a contract of agency into a contract of sale. Nor was the contract rendered a contract of sale by reason of the fact that it contained no provision that the agent should keep the money separate and apart from its other moneys, or that it should turn over the money received from the sale to the manufacturer, but instead was to pay for the lamps sold each month, less 29 per cent. for making the sales. Eilers Music House v. Fairbanks (Wash.) 141 Pac. 885. In Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093, the court said:

"A bailee may, however, enlarge his legal responsibilities by contract, express or fairly implied, and render himself liable for the loss or destruction of the goods committed to his care; the bailment or compensation to be received therefor being a sufficient consideration for such an undertaking."

In Re Flanders, 134 Fed. 560, 67 C. C. A. 484, the court said:

"The objections that ordinary invoices accompanied the shipments, that such shipments were made direct to Flanders, that the leather was sold by him in

his own name, that he allowed credit upon sales, that he guaranteed sales, and that he insured in his own name, do not change the nature of the transaction."

In Re Columbus Buggy Co., 143 Fed. 859, 74 C. C. A. 611, it was held that a contract between a furnisher of goods and the receiver, that the latter may sell, and at such prices as he chooses, that he will account and pay for the goods sold at agreed prices, that he will bear the expenses of insurance, freight, storage, and handling, and that he will hold the merchandise unsold subject to the order of the furnisher, discloses only an agreement of bailment for sale, and does not evidence a conditional sale.

In John Deere Plow Co. v. McDavid, 137 Fed. 802, 70 C. C. A. 422, the court gave similar construction to a contract containing like provisions.

Of similar import are In re Pierce, 157 Fed. 757, 85 C. C. A. 14, and Franklin v. Stoughton Wagon Co., 168 Fed. 857, 94 C. C. A. 269.

We do not find that the appellee's contention is sustainable either upon reason or authority. To constitute a sale, there must have been in the contract a vendor and a vendee, and a provision for a transfer of property by the vendor to the vendee, and an obligation by the vendee to pay an agreed price therefor. Or the circumstances outside of the contract must have been such as to show that it was the intention of the parties to make of the contract a fraudulent concealment of an actual sale. There are no such circumstances here. The stipulated facts do not in any way impeach the bona fides of the contract itself. In Ludvigh v. Am. Woolen Co., 231 U. S. 522, 34 Sup. Ct. 161, 58 L. Ed. 345, the court held that a contract under which goods were delivered by one party to another to be sold by the latter, and the proceeds paid to the former, less an agreed discount, the unsold goods to be returned to the consignor, was really a contract of bailment only, and that the consignor can, in the absence of fraud, take them back in case of the consignee's bankruptcy, unless there were other circumstances controlling the situation, and establishing that the contract was a mere cover for a fraudulent or illegal purpose.

The judgment is reversed, and the cause is remanded to the court below, with instructions to enter a judgment for the appellant.