In re KING. MOORE v. BARNES. SAME v. EMPIRE TIRE & RUBBER CO.

(Circuit Court of Appeals, Ninth Circuit. January 5, 1920.)

No. 3293.

1. BANKRUPTCY ⬡⟿140(3)—ONE DELIVERING TIRES TO BANKRUPT, TO BE KEPT SEPARATE FROM BANKRUPT'S STOCK, ENTITLED TO RECLAMATION.

Where, after dissolution of partnership and notice, the retiring partner delivered to the bankrupt, who continued in business, automobile tires, which were to be kept separate from the bankrupt's general stock, and were to be sold for the benefit of the retiring partner, etc., *held* that, under the circumstances, the retiring partner might, on bankruptcy, claim unsold tires as against the trustee.

2. BANKRUPTCY ⬡⟿140(3)—ONE DELIVERING GOODS TO BANKRUPT ON CONSIGNMENT FOR SALE ENTITLED TO RECLAMATION.

One delivering goods to bankrupt on consignment for sale *held,* in view of the transactions between the parties and the fact that there was no holding out by the consignor which would enable the consignee to commit any fraud on the public, entitled to reclaim the goods on bankruptcy, notwithstanding there was no express agreement that title should not pass or that the goods should be returned, etc.

───────────

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

In the matter of George H. King, individually, doing business as the George H. King Rubber Company and also as the George H. King Tire Company, bankrupt. Claims of D. D. Barnes and the Empire Tire & Rubber Company, a corporation, for reclamation of tires and accessories, were allowed, and in each case William H. Moore, Jr., trustee in bankruptcy, appeals. Judgment in each case affirmed.

Bicksler, Smith & Parke, of Los Angeles, Cal., for appellant.

Jesse F. Waterman and John W. Kemp, both of Los Angeles, Cal., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. There are two appeals in this case—one by the trustee from the judgment in favor of Barnes, who claimed by petition of the trustee certain automobile tires and accessories; and the other an appeal by the trustee from the judgment in favor of the Empire Tire & Rubber Company for the reclamation of certain other tires and accessories, all of such property being claimed by the trustee to belong to the bankrupt. The two cases are brought here and submitted on one record.

[1] It shows that Barnes and King had been carrying on business at 1331 South Main street, in the city of Los Angeles, as partners under the firm name of George H. King Rubber Company—Barnes, it seems, having put in all the money—which partnership was dissolved November 14, 1916; due notice of such dissolution being published November 27, 1916. King continued business at the same place, and on the day of the publication of the notice of dissolution of partnership Barnes and King entered into a written agreement reciting that Barnes had delivered to King "at his automobile tire store at 1331 South Main street, in the city of Los Angeles, California, a number of automobile tires, each suitably tagged and separately numbered, of different sizes, different makes and values, the number, value, and size of which fully appeared on" certain annexed exhibits attached to and made a part of the contract, which contract provided that King should use his best efforts to sell the tires at his place of business, and would account to and pay to Barnes, upon request, the price and account for each tire so sold, as specified on the exhibits, retaining any excess of the amount or amounts so specified as his commission for selling the tires. The contract further provided that King should keep such tires "separate and apart from other tires which he may have for sale, and to keep a separate and distinct sales book, showing the sales of all tires belonging to" Barnes, which book, as well as the inventory of the property, should be open to the inspection of the latter. The contract further provided, among other things, that Barnes guaranteed only the title to the property, and that the tires should not, without his consent, be removed by King to any other location for sale. The contract contained this further provision:

"It is distinctly understood that the title to said tires is to and does remain in said first party [Barnes] until the same are sold, and nothing herein shall be construed as a sale by first party to second party [King] of said tires; no time being specified as to how long said second party shall have an opportunity of selling said tires, but it is agreed that it shall be a reasonable length of time, depending upon the success which second party shall have in selling the same."

In both of the cases the contention of the appellant is that the application to them of the decision of this court in the case of Miller Rubber Co. et al. v. Citizens' Trust & Savings Bank, 233 Fed. 488, 147 C. C. A. 374, requires a reversal of the judgments given by the court below. As respects the Barnes Case, we think it clear that this is not so. In that case, after referring to the case of Ludvigh v. Am. Woolen Co., 231 U. S. 522, 528, 34 Sup. Ct. 161, 58 L. Ed. 345, and the decision of this court in the case of General Electric Co. v. Brower, 221 Fed. 597, 602, 137 C. C. A. 321, 326, where it was held that, "to constitute a sale, there must have been in the contract a vendor and a vendee, and a provision for a transfer of property by the vendor to the vendee, and an obligation by the vendee to pay an agreed price therefor, or the circumstances outside of the contract must have been such as to show that it was the intention of the parties to make of the contract a fraudulent concealment of an actual sale," we said (233 Fed. at page 491, 147 C. C. A. at page 377):

"There were in neither of those cases such fraudulent circumstances; but we do not think that that can be affirmed of the present case, for here, not only was the agent permitted to mingle the consigned goods with his own stock, but the contract expressly provided that the consignors would furnish the consignee 'free of all charge all samples of tires and accessories and necessary advertising matter, imprinted with the name and address of the' consignee. It is difficult to see how the consignors could have more effectually held the consignee out to its customers as the real owner of the consigned property. To permit them to retake from the stock of the bankrupt the remaining portion of the consigned goods would, in our opinion, operate as a fraud on the creditors of the bankrupt. We find confirmation of this view in the failure of the consignors to fix by the contract the prices at which the agent could sell the goods to its customers, and in their failure to therein make any provision for the remitting to the consignors of the proceeds received by it for the goods so sold; the agent being required by the contract to itself pay to the consignors for the goods so sold by it prices fixed on the invoice, less the deductions specified, and in the provision that, when the agent desired, 'four months notes drawing interest at 5 per cent. will be accepted by first parties in settlement for all purchases made by second party from first parties; provided, however, that the total maximum of such notes shall not exceed twenty-five thousand dollars ($25,000) at any one time during the first year of this contract, and that such maximum after the first year is to be subject to the mutual agreement of both parties, but not less than twenty-five thousand dollars ($25,000), unless credit of second party becomes impaired.' For the reasons stated, we think the court below was right in confirming the conclusion of the special master that, as to the creditors of the bankrupt, the title to the consigned goods in question should be held to have passed to the consignee."

In the Barnes Case there was in the contract between the parties, not only no holding out of King to his creditors as the owner of the consigned property, nor anything in the method provided therein for the handling and sale of the property tending to deceive or defraud any one, and no evidence of anything of that sort, but, on the contrary,

the evidence shows that the tires were separately tagged and numbered, and kept by King in his place of business separate and apart from other tires.

[2] In the case of the Empire Tire & Rubber Company there was a verbal agreement between the company and King that it would keep him supplied with a small stock of tires on "consignment for sale," for which he would make a settlement each month "by payment of an amount 20 per cent. less than the list price of the tires sold, with a further 5 per cent. off of said list price for a settlement of accounts within 30 days," as his commission. The findings are:

"All goods delivered to King by the Empire Company were accompanied with a statement bearing the heading 'Consigned Account,' and listing the goods sent. The amount of the goods so consigned was also entered in the books of account of the Empire Company, with the date, on a sheet marked 'Consigned Account, George H. King Rubber Company.' At the end of each month, usually on the last day or two, a representative of the Empire Company—at most times Mr. Jarman—went to King's shop and checked over the stock of Empire tires on hand. Returning to the office of the Empire Company, it was the practice to ascertain the amount of goods sold by King since the last settlement, by comparing the list of goods delivered to him since that time. The list of goods sold during the month, ascertained in this manner, was then billed to King on a statement marked 'Regular Account,' which listed the goods sold and their list prices, and stated the amount for which King should account by deducting 20 per cent. from the total of the list prices, and stated a discount of 5 per cent. for an accounting made before 30 days. The amount for which King was required to account was entered in the books of the Empire Company on a sheet marked 'Regular Account, George H. King Rubber Company.' This account was kept separately from the account marked 'Consigned Account.'

"The bill listing the goods sold during the month and stating the amount required to be accounted for by King was presented monthly, usually in person by Mr. Jarman. King made his payment by check to the Empire Company regularly each month up to the 1st of September, 1917.

"No account of sales was made by King, nor sent to the Empire Company. Shortages in the stock of tires on hand at his shop were filled regularly by the Empire Company after the monthly inventory of the stock; such replenishments being made without any order from King. King sometimes suggested an increase or decrease in the stock of certain sizes or kinds of tubes or casings, but he never placed orders for goods.

"There is no evidence of any express agreement to the effect that the title to the goods delivered by the claimant to King should remain in the claimant; nor is there any evidence of any express agreement providing for the return at any time upon any conditions of goods unsold by King or remaining in his hands.

"As receiver, the present trustee took, and now as trustee holds, in his possession all the Empire tires in stock at King's shop. The tires so seized and held are the tires described in claimant's petition, and were all furnished to King under the agreement and practice above described."

The fact that there was no express agreement that the title to the property delivered by the Empire Company to King should remain in the former, nor for the return by King of such portion of it as remained unsold by him to the consignor, does not show, nor, indeed, tend to show, that the transaction between the parties was anything more than the ordinary one of the consignment of personalty for sale, unattended, as it was, by any positive act of the consignor that can

be properly held to have enabled the consignee to commit any fraud upon the public. Ludvigh, Trustee, v. Am. Woolen Co., 231 U. S. 522, 34 Sup. Ct. 161, 58 L. Ed. 345.

The judgment in each of the cases is affirmed.