## McCALLUM v. BRAY-ROBINSON CLOTHING CO.

Circuit Court of Appeals, Sixth Circuit.
February 9, 1928.

No. 4864.

1. Sales ⬅⮞8—Whether transaction constitutes consignment or sale depends largely on intent.

Question whether particular transaction amounts to consignment or sale with attempt to retain title as security is one largely of intent.

2. Bankruptcy ⬅⮞140(1⅜)—Sales ⬅⮞8—Shipment under consignment contract, by which retailer was to account for proceeds of sales according to schedule, held not sale as to retailer's creditors, entitling wholesaler to take back goods upon retailer's bankruptcy, where there was no fraud.

Where wholesale clothier furnished clothing to storekeeper under agreement whereby the goods were consigned, wholesaler retaining title, under requirement that retailer report all sales and remit proceeds to amount of schedule of prices and keep goods insured, transaction constituted bailment and not sale, and wholesaler was therefore entitled to take back the goods upon the retailer's bankruptcy, notwithstanding goods were mingled with other goods sold on credit and bankrupt was allowed to use his own judgment as to retail prices, where transaction was free from fraud.

3. Appeal and error ⬅⮞1017—Referee's conclusions of fact, sustained by record, are accepted on appeal.

Referee's conclusions of fact are accepted by appellate court, where they are sustained by record in all material respects.

4. Bankruptcy ⬅⮞140(1⅜)—Consignment contract was not avoided as to trustee in bankruptcy of consignee by fact that goods consigned were intermingled with other goods.

Fact that goods consigned were kept by retailer in store together with other goods, so that public could not distinguish between them, did not invalidate contract of consignment as to consignee's trustee in bankruptcy, in absence of fraud or proof that creditor extended credit to bankrupt upon reliance of title in him.

5. Bankruptcy ⬅⮞140(1⅜)—Fact that consignee was entitled to sell, at his prices, accounting at consigned prices, held not to invalidate consignment as to consignee's trustee in bankruptcy.

Contract of consignment was not invalidated as to trustee of consignee on consignee's bankruptcy by fact that consignee was allowed to sell at his own judgment as to retail prices, accounting to consignor at consigned prices, where there was no agreement on consignee's part to buy the goods.

6. Sales ⬅⮞8—Contract giving consignor option to require consignee to purchase goods at end of selling season does not convert contract into sale.

Contract giving consignor option to require consignee to purchase goods not sold at end of regular selling season does not of itself convert consignment contract into one of sale.

7. Bankruptcy ⬅⮞303(5)—Evidence held to sustain finding of absence of consignor's fraud in action by consignee's trustee in bankruptcy to require return of goods taken by consignor from bankrupt's store.

In action by trustee in bankruptcy of consignee of goods to require consignor to return goods removed from consignee's store shortly before bankruptcy, evidence held sufficient to sustain finding of absence of fraud on part of consignor.

Appeal from the District Court of the United States for the Eastern District of Tennessee; Xenophon Hicks, Judge.

Petition by J. H. McCallum, trustee in bankruptcy of J. Walter Johnston, bankrupt, for an order requiring the Bray-Robinson Clothing Company to return certain goods removed from bankrupt's store prior to bankruptcy. From an order dismissing the petition and denying relief thereunder, affirming the order of a referee, petitioner appeals. Affirmed.

C. A. Noone, of Chattanooga, Tenn., for appellant.

Allen P. Dodd, of Louisville, Ky., and J. C. Curry, of Chattanooga, Tenn., for appellee.

Before DENISON, MOORMAN and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. This is an appeal from an order of the District Court denying the petition of the trustee in bankruptcy for an order requiring the appellee to return certain men's and boys' suits and clothing removed from the bankrupt's store, at Chattanooga, Tenn., shortly before the bankruptcy. The goods were furnished bankrupt by appellee—wholesale clothier at Louisville, Ky.—upon invoices under two separate written contracts, dated, respectively, August 20, 1925, and September 10, 1925. The contracts were exactly alike excepting dates and in one particular hereinafter stated. They expressly declared that the clothing to be furnished thereunder was consigned to bankrupt, and that the title thereto, and the proceeds from any sales thereof to the amount of appellee's schedule of prices, should "continue and remain in" appellee. It was also expressly "understood and agreed" that all consigned stock in bankrupt's hands remain the property of appellee, to whom the bankrupt was declared responsible, not merely for its merchantable condition and quantity, but for the loss of any goods by theft or otherwise, whether or not covered by fire insurance; that bankrupt would promptly return, upon appellee's order and demand, all consigned stock on hand, bankrupt paying all freight and express charges for its return. Bankrupt was also to report to appellee weekly "all sales of this consigned stock," and to remit appellee the proceeds of all sales up to the amount of its schedule of prices, upon receipt of same by bankrupt. The latter was also, at his own expense, to insure at full value the entire consigned stock, having the policies issued in appellee's name and duly delivered to it at Louisville; also to assume all liability and expense for the safe-keeping of "above-consigned stock." Bankrupt further agreed at all times to comply with appellee's requirements in regard to the method of making reports, taking inventories, forwarding remittances, etc. Bankrupt further agreed "at the end of the selling period, when regular sales are becoming negligible, say August for the spring season and January for the fall season, to put on a sale if necessary to dispose of the remaining merchandise, and remit [appellee] as per schedule of prices shown on [its] invoices, and in no instance at this period are you [bankrupt] to return to [appellee] any unsold merchandise except at [appellee's] specific request."

[1, 2] The ultimate meritorious question of fact is whether the transaction amounted merely to a consignment, or whether, as the trustee contends, it amounted in fact and in law to a sale, with an attempt to retain title in appellee as security.

This question is largely one of intent. Judged alone by the terms of the contract, the intention to create a bailment and not a sale clearly appears, and entitle appellee, in the absence of fraud, to take back the goods upon consignee's bankruptcy. Ludvigh v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345; Sturm v. Boker, 150 U. S. 312, 330, 14 S. Ct. 99, 37 L. Ed. 1093; Mitchell Wagon Co. v. Poole (C. C. A. 6) 235 F. 817; In re Klein (C. C. A. 2) 3 F. (2d) 375; McElwain-Barton v. Bassett (C. C. A. 8) 231 F. 889; Bartling v. Coxe (C. C. A. 5) 288 F. 314, 316. We find in the dealings of the parties nothing indicating fraud, nor anything treating the relation between them as one of purchase and sale.

The contract dated August 20, 1925, in express terms consigned clothing "as per invoices from February 1, 1925," several months in advance of the date and actual signing of that contract.[1] Throughout the dealings between the parties the distinction between consigned goods and purchased goods was fully recognized. The bankrupt all the time was *buying*[2] from appellee other *goods* direct on regular credit. The *consigned* goods under both contracts were manufactured by the Louisville Woolen Mills, the bankrupt selecting the clothing and directing its manufacture. The referee in his certificate on petition to review stated, among other things, the following:

"It appears from the proof that the first shipment under the first so-called consignment contract was made on April 8, 1925, and the consignment contract in question, although in possession of the bankrupt prior to the first shipment, was not executed until August 20, 1925, and was in possession of and retained by the bankrupt for the purpose of making an alteration therein regarding the dates when the special sales should be allowed. That the terms of the first consignment contract were agreed upon except as to the date or dates of special sales. Beginning April 8, 1925, and ending June 18, 1925, the claimant shipped to the bankrupt in accord-

[1] A small part of the goods consigned under the written contracts in question were shipped to one or both of appellant's stores in other places than Chattanooga. No complaint is made of any disposition of such other goods.

[2] All italics in this opinion ours unless otherwise stated.

ance with the contract approximately thirteen hundred sixty-six (1,366) suits and two hundred eighty-two (282) pairs of pants on consignment, which shipments were covered by invoices which are filed as exhibits. * * * Each invoice contained a description of the property shipped, together with schedule of prices, and marked thereon 'consigned' or 'on consignment.' [3] Upon each suit and pair of pants was attached an identification tag, with number and marked 'red line stock.' When received the bankrupt opened and kept a separate account in his ledger known as 'red line special' to cover the consigned goods. Beginning on April 20th and ending August 20, 1925, the bankrupt made settlements for the goods shipped on consignment at somewhat irregular intervals, generally at the end of each week. On or about August 20, 1925, a representative of the claimant visited the store of the bankrupt and *checked up the amount of goods on hand in bankrupt's store under consignment,*[4] and at which time the consignment contract sent to the bankrupt, on or about February 1, 1925, was signed by the bankrupt, and on which occasion the bankrupt and the representative of the claimant agreed upon the date or dates of the special sales.[5] On or about September 4, 1925, a second contract was executed by the claimant and the bankrupt, being identical in words and figures with the first contract.[6] The second contract was intended to cover the shipment on consignment of fall goods, and the first contract covered the shipment on consignment of spring goods. Fire insurance policies on the consigned goods were issued in the name of the bankrupt, which action was acquiesced in by the claimant.[7] A day or two before the bankrupt filed his petition, the claimant took the goods claimed by it and shipped them to Louisville, whereupon the trustee and the

claimant subsequently entered into an agreement that the goods claimed by the claimant and in its possession be appraised and sold, and the proceeds thereof be held subject to the jurisdiction of this court and the right to the same to be determined by this court. The bankrupt did not schedule the goods and merchandise in question as his property; no bill or statement was ever rendered by the claimant to the bankrupt for the clothing on consignment, and no demand was ever made for payment [for] the unsold clothing; that settlements were made at various times on the basis of consignment contracts; that all invoices covering shipments were made at various times on the basis of consignment contracts; that all invoices covering shipments of the goods in controversy were marked 'consigned,' or 'consigned account'; that both parties treated the goods as shipped, delivered, and held by the bankrupt under the two consignment contracts."

[3] The District Judge confirmed the order of the referee upon consideration, among other things, of the latter's opinion, which was thus apparently approved. The record sustains the referee's conclusions of fact in all material respects. We accept those conclusions. Ohio Valley Bank v. Mack (C. C. A. 6) 163 F. 155, 158, 24 L. R. A. (N. S.) 184; Tennessee Finance Co. v. Thompson (C. C. A. 6) 278 F. 597, 600.

[4-6] The fact that the consigned goods were kept in the store not separate and apart from other goods, and that the public could not distinguish the one from the other, is not important, in the absence of fraud or of proof that any creditor extended credit to bankrupt upon reliance of title to those goods in the bankrupt. In re Klein, supra, at page 379. That bankrupt was allowed to sell on his own judgment as to retail prices, accounting to appellee at the consigned prices, did not invalidate the contract as one of consignment. Bankrupt nowhere obligated himself to *buy* the consigned goods. He was "responsible * * * for the loss of any goods by theft or otherwise," and he assumed "all liability for the safe-keeping of the * * * consigned stock." Even at the end of the normal summer period his obligation was only to "put on a sale if necessary to dispose of remaining merchandise." For the goods so *sold* he was to remit at prices scheduled on consignment invoices; he was not required to sell except at a profit. It was only *"at this period"* that he was not to return unsold merchandise except at appellee's specific request; i. e., he was to put on a sale. But, even if the paragraph in question were construed as

---

[3] The second consignment contract was dated September 10, 1925, and declared that the goods are "consigned as per invoices from September 4, 1925."

[4] Italics as in record.

[5] There is thus no merit in the trustee's contention that the execution of the contract of August 20 long after the greater part of the merchandise was delivered constituted a fraud on the part of the bankrupt and appellee as against creditors and the trustee in bankruptcy.

[6] See note 3.

[7] Bankrupt also made some remittances at an "average" price, but appellee insisted upon remittances according to the contract. These two instances do not affect the nature of the contract relation as one of consignment, nor its good faith. McElwain-Barton v. Bassett, supra, at p. 893; Gen. Electric Co. v. Brower (C. C. A. 9) 221 F. 597, 601, 602.

giving appellee an option to require bankrupt to purchase the goods not sold at the end of the regular selling season, such provision alone would not convert the consignment contract into one of sale. In re Harris & Bacherig (D. C.) 214 F. 482, 484, 485 (opinion by Judge, now Mr. Justice, Sanford).

[7] The trustee's charge of fraud is without support in the record. The undisputed testimony repels the contention that appellee knew that bankrupt was insolvent at the time the consignment contract was made. The bankruptcy petition was filed January 4th. The bankrupt testified that he first knew he was failing when he made his inventory on January 1st. According to the testimony of appellee's credit manager, bankrupt appeared to be solvent when creditors were asked (about December 20th) to give him more time, and that he found, about January 1st, that bankrupt was probably insolvent. This testimony is persuasive. Both the trustee and bankrupt agree that there was no secrecy about appellee's removal of its consigned stock from the store on the eve of bankruptcy. No purchased goods were removed.

The order of the District Court, dismissing the trustee's petition and denying relief thereunder, is affirmed.