## In re TAYLOR.
### No. 9917.

District Court, E. D. Michigan, S. D.
Jan. 6, 1931.

Dilley & Dilley, of Grand Rapids, Mich., for petitioner.

Fred B. Darden, of Detroit, Mich., for Trustee.

SIMONS, District Judge.

This bankruptcy cause is before the court on a petition to review an order of one of the referees in bankruptcy for this district denying a reclamation petition herein. The reclamation petition was filed by Martin Chain Stores, Inc., a Michigan corporation, as petitioner, to recover from the trustee in bankruptcy possession of certain clothing delivered by the said petitioner to the bankrupt prior to the filing of the petition in bankruptcy in this cause. This clothing was so delivered in pursuance of a certain written contract between the petitioner and the bankrupt. The petitioner contends that this contract was one of consignment only, and that this merchandise still belongs to it, and that

it is entitled to the return thereof. It is the contention of the trustee in bankruptcy that the contract was one of conditional sale, for the purpose of a resale by the bankrupt, and that therefore such contract was subject to the provisions of a Michigan recording statute (section 11912 of the Michigan Compiled Laws of 1915), which requires such contracts to be filed for public record, and that as it was not so filed it is void as against the creditors of the bankrupt. The trustee also contends that the petitioner, by permitting the bankrupt to appear to be the owner of such merchandise, became thereby estopped, as against such creditors, to assert title thereto in itself. The referee sustained both of these contentions of the trustee and denied the reclamation petition. This ruling the petitioner seeks to review here.

The contract in question was executed in Michigan in 1928, to be performed in Michigan, and consisted of the following provisions, the petitioner being therein designated as the "first parties" and the bankrupt as the "second party":

"Whereas first parties are dealers in men's clothing consisting principally of suits, extra trousers, and overcoats which they place with dealers in kindred lines on consignment and whereas second party desires to have certain of first parties' merchandise on a consignment basis, it has been agreed between parties to this contract as follows:

"(1) First parties will deliver to second party on completion of this contract, certain quantities of above mentioned merchandise to be held by second party on consignment and sold by him for cash only, the number of garments being based upon the turnover.

"(2) Prices at which merchandise is to be sold are to be according to invoices rendered by first parties, with the exception of, first parties grant second party permission to raise the retail price on first parties' regular $15.00 price, to their selling price of $16.50. The following commissions, to be figured on business done each week, will be allowed second party:

"Twenty per cent. (20%) on all merchandise sold at prices other than $16.50. Twenty-five per cent. (25%) on merchandise sold at $16.50 per garment.

"(3) Settlements are to be made in full weekly, at which time second party is to report all merchandise received, sold, and on hand, showing it on forms supplied by first party. Second party agrees to take a unit count of all articles according to separate headings shown on weekly report and if same does not agree with the figures shown on said report, first parties are to be notified immediately.

"(4) First parties will pay all freight, express and parcel post charges on shipments to second party. Second party will pay all freight, express and parcel post charges on all shipments to first parties.

"(5) Goods at all times are to be subject to the order of first parties and second party is to ship or deliver on order of first parties promptly and when so requested, to turn any and all merchandise or other property belonging to first parties, to said parties. Merchandise to remain at all times property of first parties until sold and paid for in cash. Such cash, except the commission due second party, is not to be used by second party, but must be held for weekly account of goods sold, as provided in Article No. 3.

"(6) Second party is to take care of all merchandise in his possession, keep it as free from dust as possible, at least once a week to dust with whisk broom all merchandise on hand. Second party to guarantee good condition of merchandise. It is understood that the second party will be responsible for any loss incurred through theft or burglary.

"(7) Second party to give first parties a bond of One Thousand ($1,000.00) Dollars for the faithful performance of his part of his contract, second party to pay all taxes assessed on property in his hands. First parties will pay all fire insurance.

"(8) Second party agrees not to handle any lines that will conflict with first parties' line of goods.

"(9) This contract can be terminated by either party at any time. In event of cancellation by second party, contract will remain in force until all property of first parties is properly accounted for by second party.

"In witness whereof the parties have hereunto set their hands and seals the day and year above written."

There is nothing in the record to indicate that this contract was intended, by either of the parties thereto, as a sham, subterfuge, or device for misleading creditors or other persons, nor does it appear that any one was misled as a result of the making or performance thereof. The record clearly shows, and I am fully satisfied and find, that both of these parties intended to, and in fact did, perform all of the obligations of the contract in substantial compliance with its terms

328

and conditions, from the time when it was made, September 6, 1928, to the time of the filing of the bankruptcy petition herein, October 31, 1929. During that period the petitioner shipped to the bankrupt from time to time considerable quantities of clothing, all of it accompanied by statements referring to such clothing as consigned in accordance with this contract. This merchandise was added to other stock in the retail store of the bankrupt and there displayed and sold by him to his customers in the regular course of trade and without any identification or representation relative to the ownership thereof. The amount of the proceeds of these sales was deposited in a separate special bank account of the bankrupt, in his own name, but designated as a "clothing account," on which checks were sent by him to the petitioner weekly, together with settlement reports as required by the contract, the agreed commissions being retained by the bankrupt. The merchandise here sought to be reclaimed is the balance of that shipped by the petitioner remaining in the possession of the bankrupt and unsold at the time of the filing of the bankruptcy petition.

The Michigan statute on which the trustee relies is Act No. 64 of the Michigan Public Acts of 1915, which is entitled "An Act to regulate the conditional sale of personal property sold for resale, and to provide for filing the contracts thereof." It provides, in full, as follows: "Whenever any personal property is sold and delivered to any person, firm or corporation regularly engaged or about to engage in the business of buying and selling such personal property, with the condition affixed to the sale that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, with the agreement express or implied, that the same may be resold, every such conditional sale in order for the reservation of title to be valid except as between the vendor and vendee shall be evidenced in writing and the written contract of every such conditional sale or a true copy thereof shall be filed and discharged in the same manner as chattel mortgages are required to be filed and discharged."

It is clear, both from the title and from the language of this statute, that it refers and applies only to contracts of conditional sale, and that it makes no reference, and has no application, to contracts of mere consignment for sale. The difference between those two kinds of contract is fundamental and well established.

█ A contract of conditional sale is one in which a vendor of property agrees to sell, and a vendee agrees to buy, certain property, the title to which does not pass to the vendee until he performs the agreed condition of payment of the purchase price, with the right in the vendor, on default by the vendee, either to recover possession of the property or, at his election, to sue for the purchase price and thus transfer title to the vendee and convert the conditional sale into an absolute sale, the payment of such price as a condition of such transfer being thereby waived.

█ A contract of consignment has an entirely different meaning and effect. It imposes no obligation upon the consignor to sell or upon the consignee to buy any property, and it effects no sale or transfer of title, conditional or absolute, from consignor to consignee. It merely creates a bailment, between the consignor as bailor and the consignee as bailee, of property of the bailor, with authority in the bailee as his agent to sell such property to third persons and with the duty to account to him for the proceeds of any such sale. On such a sale the title passes, not from the consignor to the consignee as in a contract of conditional sale, but from the consignor as owner, through the consignee as his agent, to the purchaser. In the absence of such a sale the consignee may return the property to the consignor without liability for the purchase price thereof.

█ Whether a contract is one of conditional sale or one of consignment depends upon the intention of the parties with respect to the matters just mentioned, as ascertained by a proper construction of its provisions. Ludvigh v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345; In re Flanders, 134 F. 560 (C. C. A. 7); In re Columbus Buggy Co., 143 F. 859 (C. C. A. 8); Thomas v. Field-Brundage Co., 215 F. 891 (C. C. A. 8); In re National Home & Hotel Supply Co. (D. C.) 226 F. 840; McElwain-Barton Shoe Co. v. Bassett, 231 F. 889 (C. C. A. 8); Mitchell Wagon Co. v. Poole, 235 F. 817 (C. C. A. 6); Taylor v. Fram, 252 F. 465 (C. C. A. 2); In re Klein, 3 F.(2d) 375 (C. C. A. 2); McCallum v. Bray-Robinson Clothing Co., 24 F.(2d) 35 (C. C. A. 6); Baldwin Piano Co. v. Kraft, 30 F.(2d) 1007 (C. C. A. 6); In re Sachs (D. C.) 31 F.(2d) 799.

█ Applying these principles to the contract here involved, it is entirely clear that such contract evidences a consignment and not a conditional sale. It plainly specifies

that the merchandise in question is "to be held by second party upon consignment"; that certain "commissions to be figured on business done each week will be allowed second party"; that the consignee will not "handle any lines that will conflict with" the consignor's lines of merchandise; that the "goods at all times are to be subject to the order of" said consignor. There can be no doubt that this contract expresses the intention of the parties to create a consignment and not a conditional sale, and the contract must be given effect accordingly. It follows that the Michigan statute invoked by the trustee, which by its terms requires the public filing only of contracts of "conditional sale" from a "vendor" to a "vendee," has no application to the contract here involved. Nor is the filing of such contract required by any other statute.

In the absence, as here, of any indication of actual fraud or bad faith of either of the parties towards creditors, or of reliance by any such creditors upon the apparent ownership by the bankrupt permitted by the petitioner, there is no basis for the claim of estoppel urged by the trustee. In re Klein, 3 F.(2d) 375 (C. C. A. 2); McCallum v. Bray-Robinson Clothing Co., 24 F.(2d) 35, 37 (C. C. A. 6). As was said by the Circuit Court of Appeals in the Sixth Circuit in the case last cited: "The fact that the consigned goods were kept in the store not separate and apart from other goods, and that the public could not distinguish the one from the other, is not important, in the absence of fraud or of proof that any creditor extended credit to bankrupt upon reliance of title to those goods in the bankrupt."

The applicable rules and principles just stated are elementary and well settled, and this court would not consider it necessary to review them so fully here were it not for the vigor and apparent earnestness with which the contentions of the trustee are pressed.

It results that the order of the referee must be set aside and an order entered granting to the petitioner the relief sought in its reclamation petition, with its costs to be taxed.