## HAMILTON NAT. BANK v. McCALLUM.

## CHATTANOOGA FINANCE CO. v. SAME.

### Nos. 5878, 5879.

Circuit Court of Appeals, Sixth Circuit.

May 6, 1932.

HICKS, Circuit Judge, dissenting.

W. D. Moon, of Chattanooga, Tenn. (Cantrell, Meacham & Moon, of Chattanooga, Tenn., on the brief), for appellant Hamilton Nat. Bank.

Joe Frassrand, of Chattanooga, Tenn. (J. B. Sizer, of Chattanooga, Tenn., on the brief), for appellant Chattanooga Finance Co.

J. H. Anderson, of Chattanooga, Tenn., for appellee in both cases.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The bankrupt, Alday Motor Company, was a corporation dealing in automobiles. Appellants filed claims against the bankrupt's estate which were allowed as unsecured but disallowed as secured claims. The claim of security, substantially the same in each appeal, arises out of the following state of facts:

Appellants prior to adjudication were severally financing the bankrupt in its purchase of cars from the Chrysler Motor Car Company. The cars were shipped consigned to the manufacturer, with a sight draft, bill of lading, and order to notify bankrupt, sent to appellant bank. Upon notice to bankrupt its secretary-treasurer, R. B. Stewart, would execute a collateral form note to the appellant bank in an amount representing all or part of the invoice price. The proceeds of the note would be deposited in the bank to the bankrupt's account, and the bankrupt's check given to take up the draft and bill of lading. In the financing by the appellant finance company the proceeding was the same, except that it was the finance company's check that was deposited to bankrupt's credit in the bank. In each case Stewart, acting by agreement as agent of one of the appellants, would execute to the bank or finance company a so-called trust receipt reciting that he received the automobile therein described from the appellant therein designated, to be stored in bankrupt's place of business, and to be held there by him not as owner but as agent or bailee for the designated appellant ready at any time to deliver it back upon return of the receipt properly indorsed. Such difference as there was between the trust receipt given to the bank and that given to the finance company we regard as immaterial. The trust

receipt would be attached as collateral to the bankrupt's note. Upon payment of the draft at the bank, the bill of lading would be delivered to Stewart, who would draw bankrupt's check to the railroad company for freight charges and turn the business of receiving and unloading the automobile over to the manager of the bankrupt's used car department, who would place it on display in bankrupt's show room.

There was an agreement between the appellants and the bankrupt that Stewart would represent the appellants in the possession of the cars and see that they were not sold by the bankrupt unless it could and would make payment therefor on the appropriate note. The bankrupt had the right to sell cars for cash or on time and to take used cars in exchange. When used cars were taken Stewart would execute a trust receipt thereon in favor of the appellant which had financed the purchase of the new car sold. It was understood that Stewart would not surrender possession of any liened car until the bankrupt was in position to discharge the lien. Nothing was done except as a matter of bookkeeping to identify or segregate either new or used cars. When the cars were sold the bankrupt would deposit proceeds to its own credit and then draw its check to the interested appellant.

At the oral argument, both parties conceded that no recording or filing act was here involved, and the orders below were not based upon the local law in that respect. The appellants claim to be secured creditors in that they held title to the cars in the bankrupt's place of business at the time of adjudication by virtue of the so-called trust receipts, or failing in that, that they were at least pledgees of the cars and so entitled to a lien upon them to satisfy the advances made for their purchase.

The origin and development of the trust receipt as a convenient means of financing importations, and its later application to domestic transactions, is exhaustively discussed by the Court of Appeals of the Second Circuit in the case of In re Fountain, Inc., 282 F. 816, 25 A. L. R. 319. The characteristics which distinguish it from other forms of chattel security are precisely indicated by the same court in the case of In re James, Inc., 30 F.(2d) 555. It is quite unnecessary to add to or to elaborate upon the expositions there given. It is sufficient to say that the trust receipt is a useful and convenient method of financing commercial transactions by means of which title passes directly from the manufacturer or seller to the banker or lender who as owner delivers the goods to the dealer in whose behalf he is acting secondarily, and to whom title goes ultimately when the primary right of the banker has been satisfied. Trust receipts have generally been held not subject to recording or filing acts, probably because such statutes are to prevent secret liens upon property of persons who have had prior possession and ownership of the property. And it is undoubtedly for this very reason that holders of trust receipts have been allowed to prevail against the ultimate purchaser or his trustee in bankruptcy only where the title of the holder was derived from some one other than the debtor.

In the instant case it was thought below that title did not pass from the Chrysler Company to the appellants, but to the bankrupt by virtue of Stewart's delivery to it of the bill of lading. Whatever difficulty there is in following the transfer of title arises, it seems to us, out of the dual role of Stewart as appellants' agent and as an officer of the bankrupt, and in giving emphasis to mere sequence of events in what was intended to be, and in fact was, but a single transaction. The intention of the parties was clearly that the appellants were to be protected for advances by security title taken directly from the manufacturer and not to be surrendered until the cars were paid for. What was done clearly manifests such intention, and the bankruptcy court being a court of equity will look through form to substance and where possible give effect to what was intended, as was done by this court in Darragh v. Elliotte (Appeal of Biles) 215 F. 340, 342, and in the Second Circuit in the James Case. It is unimportant that Stewart delivered the bill of lading to the bankrupt. Whether he made actual or only symbolical delivery, for the limited and specific purpose intended, he was acting as agent of appellants, and the legal effect of what was done was nothing more than to make the bankrupt a bailee for the appellants, with authority to sell and a duty to pay over the proceeds less profit to holders of the title. This was exactly the situation in the Biles Case. The method adopted by the bank in placing cars with the bankrupt is substantially the course there upheld, and the method adopted by the finance company is identical.

There is little to distinguish the arrangement here made from a contract of consignment. Whether a contract is one of consignment or some other form of chattel security is largely one of intent, and in the absence of fraud or of proof that any creditor extended credit in reliance upon the bankrupt's title to consigned goods, the consignor will be

permitted to reclaim. McCallum v. Bray-Robinson Clothing Co., 24 F.(2d) 35, C. C. A. 6; In re Taylor, 46 F.(2d) 326 (D. C.) No fraud is here claimed, and the record discloses no creditors relying upon bankrupt's title to the cars here in question.

While necessity of registration under Tennessee Law (Shannon's Code, § 3697 et seq.) was not urged upon us, we do not overlook its possible bearing on the validity of appellants' title. In the Biles Case this court held valid an unrecorded pledge—property being in possession of the pledgor—under the law of Tennessee. In the Bray-Robinson Case no contention seems to have been raised as to necessity of recording a consignment contract in Tennessee. Dixon v. Morgan, 154 Tenn. 389, 285 S. W. 558, deals with unrecorded liens on real estate, and not with any form of chattel security. We are not divided in our conception of trust receipts. The court divides only upon the application of the trust receipt principle to the instant facts—with the source of title as the element in dispute. Apart from the local registration law and the provisions of the Bankruptcy Act as to preferences (sections 3, 60 [11 USCA §§ 21, 96]), no reason occurs to us why the appellants should not be entitled to the security which it was intended they should have. In re Bernard & Katz, 38 F.(2d) 40 (C. C. A. 2).

■ As to the used cars taken by the bankrupt in exchange, they were merely substituted for the new cars sold. The bankrupt under its limited powers as bailee for the appellants could sell for cash, on time, or for part cash and part exchange. Whatever was received for appellants' cars, either in the way of money or property, less profit or commissions, became the property of the appellants. We see nothing in the transactions that in any way invalidates the title of appellants to the used cars or to the new cars. Their claims should have been allowed as secured.

The orders of the District Court are reversed and the cases remanded for further proceedings in conformity with this opinion.

HICKS, Circuit Judge (dissenting).

I cannot assent. I do not think that the theories either of "pledge" or of "trust receipt" are available to appellants.

*As to the pledge:* If the cars both new and used were actually pledged to appellants I have no doubt that appellants might have redelivered them to Stewart as bailee. Clark v. Iselin, 21 Wall. 360, 369, 22 L. Ed. 568.

This was substantially what was done in Darragh v. Elliotte, with the exception that in the Darragh Case the car was redelivered to the bankrupt rather than to a third party but appellants' obstacle is that possession is of the essence of a pledge and that there is no evidence that appellants ever had possession of the cars (as had Biles & Co. in the Darragh Case) either actually or through any symbol upon which they could predicate constructive possession. See Casey v. Cavaroc, 96 U. S. 467, 477, 24 L. Ed. 779. The rule undoubtedly is that a pledge, not followed by delivery, actual or symbolical, is invalid against a trustee in bankruptcy as the representative of creditors. See Interstate Banking & Trust Co. v. Brown, 235 F. 32, 36, C. C. A. 6; Hook v. Ayers et al., 80 F. 978, 981, C. C. A. 7.

*As to the trust receipts:* I concur in the court's conception of those instruments. It is in accord with In re A. E. Fountain, Inc., 282 F. 816, C. C. A. 2, 25 A. L. R. 319; In re James, Inc., 30 F.(2d) 555, C. C. A. 2; Century Throwing Co. v. Muller, 197 F. 252, C. C. A. 3; In re Bettman-Johnson Co., 250 F. 657, C. C. A. 6. But I think its opinion misapplies the principle. Running through all the trust receipt cases which I have examined is the idea that the holder of the trust receipt must have had some sort of security title to the goods which he has delivered in exchange for it. See In re Richheimer, 221 F. 16, 22, C. C. A. 7. It is this attribute of ownership variously called "bankers title" or "security title" that furnishes the analogy between trust receipts and consignment contracts.

I agree with the Referee and District Judge that appellants never acquired any such title to or ownership of the cars in question.

*As to the new cars:* The contract of purchase was between the Chrysler Company and the bankrupt. The invoice was sent directly from the manufacturer to the bankrupt. The sight drafts were upon the bankrupt. The attached bills of lading ran to the bankrupt. The drafts with the attached bills of lading and order to notify the bankrupt were sent through appellants in the usual course. When the bankrupt received notice of the drafts it went to appellants, borrowed the money upon its own notes, paid the drafts, took the bills of lading, presented them to the carrier, and received the cars. Appellants purchased nothing from the manufacturer; they advanced nothing out of their own funds in payment of the drafts; they did not retain the bills of lading; nor was any bill of sale executed in their favor.

We have no such case as In re Bettman-Johnson Co., supra, or Century Throwing Co. v. Muller, supra. We have no such case as appellant bank itself would have had if it had adhered to its original practice. Its cashier testified: "It had been the bank's custom for years to pay those drafts itself, get the bills of lading in their possession, which they construed as possession of the car, and later delivered that bill of lading to the operator. That was discontinued in 1927."

I am unable to find any basis for the claim that appellants ever acquired title to or ownership of any of the used cars. The proper construction of the "trust receipts" does not depend upon the name given them by the parties. Nomenclature is of little importance. Their legal effect should be determined with reference to the dealings between the parties and the circumstances under which the receipts were executed. When examined in this light they appear to me to be nothing more than security for undisclosed amounts of borrowed money. I think therefore that they are void because they not only undertake to carry a secret lien (Turbeville v. Gibson, 5 Heisk. (Tenn.) 571) but because they are expressly forbidden by the act of the General Assembly of Tennessee, 1807, ch. 85, § 4 (see Shannon's Code, 1917, § 3664.[1] Italics in the note are mine). The primary object of the Tennessee registration laws is to protect creditors against secret and unrecorded liens. Dixon v. Morgan, 154 Tenn. 389, 408, 285 S. W. 558. This act has for a century and a quarter represented public policy, and because I conceive that the effect of the opinion is to devitalize this statute I file this memorandum.

---

[1] "3664. Personalty; mortgages of, to be in writing, etc.—All mortgages and *trusts of personality shall be in writing, and proved and registered* as hereinafter provided, to be valid against the creditors of the bargainor, or purchasers under him for value, and without notice."