**In re D.I.A. SALES CORPORATION,**
**Debtor.**

**Irwin RAY, Appellant,**

v.

**William C. MAGUIRE, Trustee, et al.,**
**Appellees.**

**No. 15695.**

United States Court of Appeals
Sixth Circuit.

Dec. 19, 1964.

Irving M. Wolff, Miami, Fla., for appellant.

Allan Neef, Detroit, Mich. (Darden, Neef & Heitsch, Detroit, Mich., on the brief), for appellee Maguire.

Archie Katcher, Detroit, Mich. (Katcher & Feldman, Detroit, Mich., on the brief), for appellee Winston.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

HARRY PHILLIPS, Circuit Judge.

D.I.A. Sales Corporation, hereinafter referred to as D.I.A., operated jewelry concessions in various Montgomery Ward department stores, pursuant to a licensing agreement. Harry Winston, Inc., appellee, hereinafter referred to as Winston, supplied diamond merchandise to D.I.A. pursuant to a "Memorandum of Agreement" executed in February 1961.

D.I.A. filed a voluntary petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501–516 (1938), on March 13, 1963. This petition was approved by the Honorable Talbot Smith, District Judge, and an order was entered appointing appellee William C. Maguire as trustee.

Winston then filed a petition for reclamation, seeking repossession of certain merchandise consisting of diamond rings and unset diamonds. On May 22, 1963, the district judge entered an order of reference providing that all matters arising in the proceeding were referred to the referee except such matters as are reserved to the district judge by the provisions of Chapter X of the Bankruptcy Act, and that any and all matters reserved to the district judge by the statute were referred to Harry G. Hackett as special master, generally to hear and report.

The trustee filed with the referee an application for an order granting Winston's reclamation petition, attaching thereto a stipulation agreement entered into between D.I.A., Winston and the trustee, and an indemnification agreement executed by Winston. This stipulation recognized that the "Memorandum Agreement" of February 1961 between D.I.A. and Winston was a valid and enforceable consignment agreement; and that Winston was entitled to the return of all unsold merchandise delivered by it to D.I.A. pursuant to this consignment agreement. The stipulation provided that an inventory of all Winston merchandise would be taken by the trustee with the assistance of and at the expense of Winston. Winston waived the immediate return of its merchandise so

that the business could be continued under the supervision of the trustee, and agreed to make additional merchandise available to the trustee as needed. It was further provided that if no plan of reorganization for D.I.A. had been confirmed by the court or no satisfactory agreement reached by December 26, 1963, Winston then would have a right to the return of its consigned merchandise. Under the terms of the indemnification agreement, Winston obligated itself to hold the trustee harmless from any net loss suffered by the trustee in the operation of the business for the period from May 2, 1963 to December 26, 1963.

In response to a show cause order, appellant herein, an unsecured creditor, filed a reply opposing upon various grounds the granting of the reclamation petition and the approval of the stipulation and indemnity agreement. After hearing testimony on the issues raised by appellant, the referee entered an order approving the stipulation and indemnification agreement and granting Winston's reclamation petition. A petition for review was filed before the district judge and the referee filed a certificate setting forth detailed findings of fact and conclusions of law. After a hearing the district judge affirmed the order of the referee, and appellant has appealed.

The following questions are raised in this court:

(1) Did the referee and district judge err in holding that the "Memorandum of Agreement" between Winston and D.I.A. constituted a valid consignment agreement enforceable as against the creditors of D.I.A.? Appellant contends that this instrument did not constitute a consignment agreement and therefore that Winston should be adjudged to be an unsecured creditor.

(2) Is it necessary for a consignment agreement to be recorded in order to be enforceable against creditors under Michigan law?

(3) Under a broad order of reference in a proceeding under Chapter X of the Bankruptcy Act does the referee have authority to enter an order determining the validity of a consignment agreement, authorizing and approving a stipulation and indemnity agreement providing for the continued operation of the debtor's business by the trustee, and granting a reclamation petition; or is this power reserved exclusively to the district judge? The appellant contends that this power could not be exercised by the referee and is within the exclusive jurisdiction of the district judge.

(4) Did the order entered by the referee in this case conform to the requirements of General Orders 23 and 47 of the General Orders in Bankruptcy and Rule 52 of the Federal Rules of Civil Procedure?

1) The Consignment Agreement

The "Memorandum of Agreement" between Winston and D.I.A. provided that all merchandise delivered by Winston was to be accepted by D.I.A. on consignment; that Winston would retain title to such merchandise at all times, the interest of D.I.A. being limited solely to possession as consignee; that upon the sale of any consigned merchandise, the title would pass directly from Winston as consignor to the purchaser; that all merchandise would be deemed to be on consignment regardless of failure to label it; and that the merchandise was to remain at all times subject to the direction and control of Winston and upon demand D.I.A. would return any unsold merchandise promptly to Winston.

Appellant contended before the referee and district judge, and contends here, that this instrument was a title retained sales contract, not a true consignment agreement, and that even if its terms are held to meet the requisites of a consignment contract, Winston abandoned every requirement essential to establishing its position as consignor and the character of the agreement was altered by the conduct of the parties.

The referee made findings of fact and conclusions of law to the effect that the instrument was a valid consignment agreement which had not been abandon-

ed by Winston, and that its validity had not been destroyed by conduct of the parties.[1]

The district judge adopted the referee's findings of fact and conclusions of law as his own, saying:

"The Court being of the further opinion, from a review of the record, that in any event, it is fully in accord with the findings and conclusions of Harry G. Hackett and would enter the same Order itself on the basis of said record if it considered this matter as one requiring an original determination by it; * * *"

■ On appeal, where there are concurrent findings of fact by the referee and the district judge, the findings will not be set aside on anything less than demonstration of plain mistake. In re Euclid Doan Co., 104 F.2d 712 (C.A.6), cert. denied, 308 U.S. 619, 60 S.Ct. 291, 84 L.Ed. 517; Kowalsky v. American Employers Ins. Co., 90 F.2d 476 (C.A. 6); Rule 52(a) Fed.R.Civ.P.

"In ordinary commercial practice, a consignment is nothing more than a bailment for care or sale, wherein there is no obligation of purchase in the consignee." 4 Collier, Bankruptcy ¶ 70.18 [5] at 1090 (14th ed. 1962) [hereinafter cited as "Collier"]; In re Taylor, 46 F.2d 326, 328 (E.D.Mich.). The distinguishing feature between a consignment agreement and a conditional sales agreement is that in the latter case there is an obligation to purchase or pay for goods involved. Earhart v. Callan, 221 F.2d 160, 163 (C.A.9), cert. denied, 350 U.S. 829, 76 S.Ct. 59, 100 L.Ed. 740; In re Taylor, supra. See also Walther v. Williams Mercantile Co., 169 F. 270, 273 (C.A.6) and 4 Collier, ¶ 70.18 [5] at 1093. This difference is one of law and

---

1. The referee made the following findings of fact:

"1. There was no drastic departure from the consignment agreement in the conduct of the parties.

"2. The only material variance from the consignment agreement was after the fact, in connection with the failure of the Debtor to remit for the sold merchandise, but no variance affected a passage of title to the merchandise from Winston to Debtor.

"3. Winston treated the consigned merchandise as its own, insured the same, paid the shipping charges, and kept a strict accounting and perpetual inventory of all merchandise delivered by it to Debtor on consignment, and inventoried the consigned merchandise in Debtor's stores on August 31, 1961, and August 31, 1962.

"4. The Debtor treated Winston's consigned merchandise as the property of Winston and Debtor kept a strict accounting and perpetual inventory of all of the Winston's consigned goods. Debtor also insured the goods.

"5. The consigned goods of Winston are identifiable by tag number, style, stencil numbers in the ring shanks, photographs, quality of diamonds, weight and size.

"6. The Stipulation and Indemnification Agreement are in the best interests of the Debtor, the Trustee and creditors.

"7. Approval of the Stipulation and Indemnification Agreement is essential to the continuance of the Debtor's business."

The conclusions of law of the referee include the following:

"2. The following elements are present and indicate that the transaction was a true consignment:

"(a) Consignment was suggested and contemplated at the outset.

"(b) An accounting of sales was to be given by Debtor monthly, within 10 days after the receipt of the proceeds from Montgomery Ward.

"(c) Debtor was to pay only for pieces sold.

"(d) It was agreed that the merchandise would remain Winston's property until sold.

"(e) The parties considered the transaction as a consignment and treated the same as such in all their dealings, substantially living up to the terms of the agreement.

"(f) There is no evidence that any person was defrauded as a result of the transactions. * * *

"3. The conduct and accounting practices of Debtor and Winston were entirely consistent with the consignment arrangement.

"4. Debtor having defaulted under the consignment agreement, Winston is entitled to the return of its consigned goods, and the Stipulation and Indemnification Agreement represent a fair compromise of the respective rights of the parties."

fact and is to be determined from the terms of the contract and the law of the state where the chattels are located when the contract was made. 3 Collier, ¶ 60.44 at 1000. If the agreement herein involved is one of consignment, the consignor is entitled to take back the goods upon the bankruptcy of the consignee, in the absence of fraud. Ludvigh v. American Woolen Co., 231 U.S. 522, 34 S.Ct. 161, 58 L.Ed. 345; McCallum v. Bray-Robinson Clothing Co., 24 F.2d 35, 36 (C.A.6); In re National Home & Hotel Supply Co., 226 F. 840, 844 (E.D. Mich.).

█ We hold that the referee and district judge did not err in their concurrent finding that the contract between D.I.A. and Winston was a valid consignment agreement, binding upon the trustee in bankruptcy, and that its validity was not destroyed by the conduct of the parties.

### 2) Failure to Record

█ Appellant further contends that the agreement was not recorded and is therefore not enforceable against creditors under M.S.A. § 19.381 [Comp.Laws 1948, § 442.101]. This statute has no application to a contract of consignment such as the one involved in this case. In re Taylor, supra, 46 F.2d 326, 329 (E.D. Mich.).

### 3) Jurisdiction of Referee in Bankruptcy

An order of reference was entered by the district judge, pursuant to 11 U.S.C. § 517,[2] (Supp.1963), referring all matters to the referee except such matters as are reserved to the district judge by Chapter X of the Bankruptcy Act. The language of this order of reference was so broad as to confer upon the referee the maximum authority permitted by Chapter X.

Appellant contends that the referee had no authority to grant the reclamation petition and approve the stipulation and indemnity agreement, and that these matters are reserved exclusively to the district judge under Chapter X.

The statute expressly directs that the other provisions of the Bankruptcy Act, as set forth in Chapters I to VII inclusive, shall apply to proceedings under Chapter X "insofar as they are not inconsistent or in conflict with the provisions of this chapter." 11 U.S.C. § 502 (1938). Chapter X further provides: "Upon approval of a petition, the jurisdiction, powers, and duties of the court and of its officers, where not inconsistent with the provisions of this chapter, shall be the same as in a bankruptcy proceeding upon adjudication." 11 U.S.C. § 514 (1938). The Act defines "court" to mean "the judge or the referee." 11 U.S.C. § 1, sub. 9 (Supp.1963).

█ We accordingly hold that, under the broad order of reference entered by the district judge in this case, the referee had powers as broad as he would possess in a proceeding under Chapters I through VII. These powers include the determination of controversies relating to property over which the bankruptcy court has actual or constructive possession. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876; Mueller v. Nugent, 184 U.S. 1, 13, 22 S.Ct. 269, 46 L.Ed. 405; Earhart v. Callan, 221 F.2d 160, 165 (C.A.9). The powers under Chapters I through VII also include authority on the part of the referee to entertain reclamation petitions. 4 Collier ¶ 70.39 at 1302; 6 Collier ¶ 3.09 [5] at 625. We hold that the authority of the district court to refer this matter to the referee is not defeated by 11 U.S.C. § 516, sub. 1 (1938), which reserves to the district judge the power to permit the rejection of executory contracts of the debtor.

Accordingly we affirm the holding of the district court that the referee acted within his authority in entering the or-

---

**2.** "The judge may, at any stage of a proceeding under this chapter, refer the proceeding to a referee in bankruptcy to hear and determine any and all matters not reserved to the judge by the provisions of this chapter, or to a referee as special master, to hear and report generally or upon specified matters."

der granting the reclamation petition and approving the stipulation and indemnity agreement.

### 4) Sufficiency of Referee's Order

We find no merit in appellant's contention that the order of the referee was defective in that it failed to set forth his findings of fact and conclusions of law. In the first footnote we have quoted from the findings of fact and conclusions of law contained in the referee's certificate on the petition for review. We hold that the certificate of the referee contained adequate findings of fact and conclusions of law and that it was not necessary for him to set forth these same findings and conclusions in the order.

Affirmed.