**MINIATURE VEHICLE LEASING CORP., a corporation of New Jersey, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. 924–63.**

United States District Court
D. New Jersey.

March 29, 1967.

Joseph Schoenholz, Newark, N. J., for plaintiff.

David M. Satz, Jr., U. S. Atty., for the District of New Jersey, for defendant.

Henry G. Zapruder, Dept. of Justice, Tax Division, for defendant.

## OPINION

SHAW, District Judge.

Plaintiff brings this action pursuant to 28 U.S.C. § 1346(a) (1) claiming the right to refund of excise tax alleged to have been erroneously or illegally assessed and collected. The assessment of tax was upon the sale by plaintiff of Volkswagen automobiles in the United States. The automobiles were imported by plaintiff from a distributor in England. 26 U.S.C. § 4061(a) (1) provides for the imposition of such tax at the rate of 10% of the price at which the importer sells the automobiles subject to exceptions defined by the provisions of 26 U.S.C. § 4216(a) (b).

The pertinent facts may be briefly summarized as follows:

During the taxation quarter ending June 30, 1960 plaintiff imported 30 Volkswagen automobiles which it procured from a distributor in England. Six of these automobiles were sold to Sun Motors in Alexandria, Virginia, at a price of $1575 per car. Twenty-four were shipped to E. M. Stafford, Inc. (Stafford) and sold by Stafford at auction. Title to each car as sold passed directly from plaintiff to the purchaser. Stafford retained a commission of $25 on each car sold. The average remission per car from Stafford to plaintiff on the 24 vehicles was $1631.42.

The automobiles were manufactured in Germany. A domestic corporation, Volkswagen of America, has an exclusive franchise with the manufacturer to purchase and import Volkswagens. It is by reason of this that plaintiff found it necessary, if it were to sell Volkswagens, to import from a distributor in England. Excise taxes assessed by defendant against Volkswagen of America and plaintiff were computed upon the price at which each, as an importer, sold the cars. Volkswagen of America was assessed a tax averaging $109.67 per car and plaintiff was assessed an average of $144.77 per car. The automobiles imported and sold by each are substantially identical. The minor differences which would be related to the value of each automobile are not relevant to the crucial issue presented. Plaintiff does not challenge as incorrect the arithmetical computation of tax.[1] The inequity, alleged to be

---

1. The tax was assessed at 10% of the selling price. 26 U.S.C. § 4061(a) (1). The fact that the net amount of tax per car does not equal 10% of the average sales price by plaintiff may be due to costs of items excluded from the sales price by the Secretary pursuant to 26 U.S.C. § 4216(a). There is, however, no explanation for such difference in the record.

discriminatory, is predicated upon the theory that defendant should not be permitted in taxing plaintiff to use a sales price higher than that used in computing tax assessed against Volkswagen of America because the net result as between plaintiff and Volkswagen of America was discriminatory. Stated otherwise, plaintiff urges that the price at which Volkswagen of America sold its imported automobiles is the price upon which the assessment against plaintiff should have been computed. The argument challenges the alleged unconstitutional application of the taxing statute and is grounded upon the provisions of the Fifth Amendment and upon Article 1, Section 8 of the United States Constitution. The latter provides:

"The Congress shall have Power to lay and collect Taxes, Duties, Imposts and Excises * * *. but all Duties, Imposts and Excises shall be uniform throughout the United States".

■ This provision of the Constitution was not intended to assure the equality of tax burden upon individual taxpayers of similar class. "[G]eographical uniformity, not uniformity of intrinsic equality and operation" is all that was intended. See Fernandez v. Wiener, 326 U.S. 340, 359, 66 S.Ct. 178, 188, 90 L.Ed. 116 (1945); Knowlton v. Moore, 178 U.S. 41, 104, 20 S.Ct. 747, 44 L.Ed. 969 (1900).

■ The tax imposed by 26 U.S.C. § 4061(a) (1) is uniformly imposed in all of the States at a rate of 10% of the selling price. Plaintiff's problem springs from a disparity in the tax base to which a uniform tax rate is applied. The disparity in tax base is evidently due to the fact that plaintiff, as an importer, cannot buy directly from the manufacturer and, as a consequence, incurs increased costs which are reflected in the sale price upon which the excise tax is computed. An analogous situation was presented in Fitch v. United States, 323 U.S. 582, 65 S.Ct. 409, 89 L.Ed. 472 (1945) where the court stated at page 586, 65 S.Ct. at page 412:

"* * * discrimination, to the extent that it may exist, is an unavoidable consequence of an excise tax based on the wholesale selling price. Such cost factors as labor, materials and advertising naturally vary among competing manufacturers; *different costs and different methods of doing business* in turn may cause the wholesale selling prices to lack uniformity. And if these prices are taxed without adjustment for differing cost factors, tax inequalities and discriminations inevitably result. But where, as here, a flat tax is placed on the wholesale selling prices and no statutory provisions are made for relief from the resulting natural tax inequalities, courts are powerless to supply it themselves by imputing to Congress an unexpressed intent to achieve tax uniformity * * *." (Emphasis supplied)

■ The claim of plaintiff under the Fifth Amendment is likewise without merit. Congress may prescribe *what* shall be taxed and a uniform percentage to be applied to it in computation of the tax. What shall be taxed in this case is a selling price. The fact that a uniform percentage tax exacts more from plaintiff who sells at a higher price than a competitor may be painful; it is not unconstitutional. In Helvering v. Lerner Stores Co., 314 U.S. 463, 468, 62 S.Ct. 341, 86 L.Ed. 343 (1941) the Supreme Court stated that:

"A claim of unreasonable classification or inequality in the incidence or application of a tax raises no question under the Fifth Amendment which contains no equal protection clause. LaBelle Iron Works v. United States, 256 U.S. 377, 41 S.Ct. 528, 65 L.Ed. 998; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 401, 60 S.Ct. 907, 84 L.Ed. 1263."

But plaintiff does not rest upon the foregoing contentions raised by the allegations of its initial complaint filed November 6, 1963. On September 30,

1965 it filed an amended complaint raising for the first time in this litigation the application of 26 U.S.C. § 4216 (b) (1) (B)[2] to sales made through Stafford. By memorandum and at pretrial on January 12, 1966 plaintiff injected the further issue of whether the tax assessed against it violated a treaty of friendship between the United States and Germany.[3]

Defendant argues that there was no sale on consignment because Stafford was merely acting as a sales agent. Assuming that there is any merit to this argument on the facts as presented, it would follow that the price Stafford obtained for the automobiles would be plaintiff's price for the purposes of taxation. Hence, the Court perceives no difference here between a direct sale by plaintiff through an agent or a sale made by a consignee. For all practical purposes a consignee is an agent of the consignor and since the term "consignment" as used in the statute is not defined in the Internal Revenue Code or by regulations, the Court must look to the ordinary meaning of the word. Consignment was defined in In Re Taylor, 46 F.2d 326 (E.D.Mich. 1931) at page 328 as follows:

"A contract of consignment has an entirely different meaning and effect. It imposes no obligation upon the consignor to sell or upon the consignee to buy any property, and it effects no sale or transfer of title, conditional or absolute, from consignor to consignee. It merely creates a bailment, between the consignor as bailor and the consignee as bailee, of property of the bailor, with authority in the bailee as his agent to sell such property to third persons and with the duty to account to him for the proceeds of any such sale. On such a sale the title passes, not from the consignor to the consignee as in a contract of conditional sale, but from the consignor as owner, through the consignee as his *agent*, to the purchaser. * * *" (Emphasis supplied)

Regardless, however, of the fact that the automobiles sold by Stafford were sold on consignment, plaintiff comes too late to claim refund on that basis. It was held in Nemours Corp. v. United States, 188 F.2d 745 (3rd Cir. 1951), cert. denied 342 U.S. 834, 72 S.Ct. 50, 96 L.Ed. 631 (1942) that:

"A long standing statutory provision with regard to tax refunds is that suit may be brought only after a claim for refund has been filed with the Commissioner in accordance with the law and Treasury Regulations. * * * It is to be noted that both the grounds for recovery and the facts supporting them must be shown. * * *"

Under the applicable Treasury Regulation claim for refund must state all grounds on which it is based.[4]

2. (b) Constructive sale price—
    (1) In general.—If an article is—
     *    *    *    *    *
     (B) sold on consignment,
  *    *    *    *    *
the tax under this chapter shall (if based on the price for which the article is sold) be computed on the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary or his delegate.

3. 7 U.S.T. and O.I.A., Part 2, 1938 (1956) Article XVI (at p. 1857)
    1. Products of either party shall be accorded, within the territories of the other Party, national treatment and most-favored nation treatment in all matters affecting internal taxation, sale, distribution, storage and use.
Article XXV (at p. 1965)
    1. The term "national treatment" means treatment accorded within the territories of a Party upon terms no less favorable than the treatment accorded therein, in like situations, to nationals, companies, products, vessel or other objects, as the case may be, of such Party.

4. 26 C.F.R. 301.6402–2(b) provides:
    (b) Grounds set forth in claim. (1) No refund or credit will be allowed after the expiration of the statutory period of limitations applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed

Plaintiff's claim for refund dated May 16, 1963 recites:

"Claimant purchases in Europe and imports new Volkswagens fitted for American use and sells them at wholesale in arms-length transactions.

"Identical transactions with the identical cars are engaged in by Volkswagen of America which has a special arrangement with the factory closed to the claimant.

"Volkswagen of America pays a tax averaging $109.67 on each car and claimant has been taxed an average of $144.87 for the identical car.

"The tax as levied is discriminatory against the claimant. The Government has accepted a standard of value in the Volkswagen case appropriate to the intention of Congress to base the tax on the wholesale selling price without including charges that have no connection with the manufacturing process. That standard should be applied as respects the claimant. The word 'price' in the Act is merely a device for reaching the evaluation the Government has already made. The Act as administered aids a monopolistic cartel system in direct contravention of the anti-trust or free trade business and Legislative philosophy of this country."

■ Plaintiff's claim for refund did not apprise the Commissioner of the fact that the sale was on consignment or what the constructive price should be. Nor did plaintiff separate its sale of six automobiles to Sun Motors from its sale on consignment through Stafford. The Supreme Court held in Real Estate-Land Title & Trust Co. v. United States, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542 (1940), that a taxpayer who makes a claim for refund which is based on obsolescence of certain property could not thereafter argue in court for a refund on the grounds that the property was aban-

doned. Cf. Bouchard v. United States, 143 F.Supp. 5(D.Wis. 1956). This case holds that grounds not set out in the claim for refund, but which do not take the government by surprise, may be presented in a civil action for refund. Assuming the rationale to be correct, *Bouchard* would have no application to the facts in this case. Specifically, an objection to a motion to amend the pleadings was withdrawn by the government in *Bouchard* and the government had the benefit of a complete audit of the claims asserted by the taxpayer. In the instant case defendant did not consent to the filing of the amended complaint and it does not appear that the Internal Revenue Service had any opportunity when it ruled on plaintiff's claim for refund to consider any facts made available to it relating to sales on consignment.

■ A prerequisite of jurisdiction of the district court conferred by 28 U.S.C. § 1346(a) (1) is the filing of a claim for refund so that the Internal Revenue Service may first pass upon the validity of it. 26 U.S.C. § 7422(a). An administrative review can only be held to have dealt with the particular claim that is made. Hence, a claim in the district court for a refund of taxes alleged to have been erroneously or illegally assessed which is at variance with the claim presented for administrative review is not one which the district court has jurisdiction to entertain. 26 U.S.C. § 7422 (a). The claim made in a district court must coincide in substance with the claim for refund filed with the Internal Revenue Service. The claim here is a new and different claim and, besides, it is asserted by amended complaint beyond the expiration of the period of limitation for filing the claim. 26 U.S.C. § 6511(a) (b), 26 C.F.R. 301.6402–2.

■ It was not contemplated by Congress that the district court should act on a claim for refund of tax upon which

before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund

is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. * * *

there had been no previous administrative action because of failure of the taxpayer to present the claim. United States v. Felt & Tarrant, 283 U.S. 269, 51 S.Ct. 376, 75 L Ed. 1025 (1931).

The argument that the tax assessment violated the Treaty of Friendship, Navigation and Commerce with Germany might be placed in the same category as the argument for sales on consignment. It was not raised in the claim for refund. But disposition of this point need not rest on that ground. National treatment is defined in the treaty as being the same treatment as is given to American products in like situations. Excise tax on the sale of automobiles manufactured in the United States is at the same rate of selling price as those imported from Germany via an English distributor. The fact that there may be a differential of tax base which is caused by the importation process raises no question of observance of the treaty. The treaty does not in any way guarantee equality of treatment as between identical products of the *same* nation. It relates only to comparable treatment of German products with American products of similar nature. In Smith v. United States, 319 F.2d 776 (5th Cir. 1963), it was held with respect to taxation under the treaty that what was intended is that automobiles would be taxed only *once*, upon their *entrance* into United States commerce.

The same standard of treatment as to what shall be taxed and percentage rate is applied to automobiles manufactured in the United States and to Volkswagens manufactured in Germany and imported to the United States. The inequalities in the net amount of tax to be paid, as between importers, is not material. As previously pointed out, the same inequalities necessarily exist in taxes assessed against American manufacturers and producers because of variance of production costs. Importers are placed in no different position.

For the reasons stated judgement will be entered in favor of defendant and against plaintiff with prejudice and without costs.

An appropriate order for entry of judgment will be submitted.