**In re PACIFIC HOMES, a California Non-Profit Corporation, also dba Asbury Pharmacy, Casa De Manana, Claremont Manor, Kingsley Manor, Pohai Nani, Wesley Palms, Sparr Convalescent Hospital and La Jolla Convalescent Hospital, Debtor.**

**Richard E. MATTHEWS, Trustee of the estate of Pacific Homes, a California Non-Profit Corporation, Plaintiff,**

v.

**The UNITED METHODIST CHURCH, an unincorporated association, et al., Defendants.**

**No. 77 01667 JM–AAH.**

United States District Court, C. D. California.

Aug. 16, 1978.

Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal. by Alan R. Woodard, Los Angeles, Cal. (argued), Morris Pfaelzer, and Lee L. Blackman, Los Angeles, Cal., for plaintiff-trustee Richard E. Matthews.

Musick, Peeler & Garrett, Los Angeles, Cal. by William McD. Miller, III, Los Angeles, Cal. (argued), for defendant Pacific and Southwest Annual Conference of the United Methodist Church and certain individual defendants.

Witwer, Moran, Burlage & Atkinson, Chicago, Ill., Sullivan, Jones & Archer by Daniel R. Salas, San Diego, Cal., for defendant General Council on Finance and Administration of the United Methodist Church and certain persons upon whom service of process was attempted on behalf of the United Methodist Church.

Owens, Whiteman & Bankes, Philadelphia, Pa., and Tuttle & Taylor by Marilyn Clare, Los Angeles, Cal., for defendants Board of Global Ministries of the United Methodist Church and Health and Welfare Division of the Board of Global Ministries of the United Methodist Church.

Argue, Freston & Myers by Stephen F. Harbison, Los Angeles, Cal., for defendant D. Leslie Hole.

Fennemore, Craig, von Ammon & Udall by Dwayne L. Burton, Phoenix, Ariz., for defendant Harold Thumma.

Turner, Smart & Frydrych, Pasadena, Cal., for certain individual defendants.

DECISION AND ORDER DENYING MOTIONS TO WITHDRAW REFERENCE TO BANKRUPTCY JUDGE AND CERTIFICATION FOR INTERLOCUTORY APPEAL

HAUK, District Judge.

This matter arises out of bankruptcy litigation involving the Chapter X Estate of the Pacific Homes Corporation, a California non-profit corporation which operates retirement homes and health care facilities providing residential and convalescent care to approximately 1,700 senior citizens. The motion before the Court raises a single and narrow, but complex legal question: Does a bankruptcy judge-referee in a Chapter X bankruptcy proceeding possess jurisdiction over a plenary action for negligence, breach of fiduciary duties, mismanagement, and waste brought by a Chapter X Trustee and referred by the District Court to the Bankruptcy judge-referee, when the defendants to the action file timely objections to the jurisdiction of the Bankruptcy judge-referee?

I. BACKGROUND

The Pacific Homes Corporation (hereinafter Pacific Homes), a California non-profit corporation, owns and operates convalescent care and residential care facilities for senior citizens in several states, including

California.[1] Pacific Homes became financially distressed[2] and, in February 1977, filed a petition in this District for an arrangement of its financial affairs under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. Under our Local Rules applicable to assignment of bankruptcy cases,[3] Bankruptcy Judge James E. Moriarty received this case. After proceeding in Chapter XI for several months, Pacific Homes determined that it could not confirm a plan of arrangement, and thereupon petitioned to convert the Chapter XI proceeding into a corporate reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501–676.

Under the Local Rules governing the assignment of bankruptcy cases,[4] this Court received this case. On November 4, 1977, this Court, after a hearing on the matter, referred to Bankruptcy Judge Moriarty the question of whether the Chapter XI proceeding should be converted into a Chapter X proceedings. On November 11, 1977, the Court entered a written order of reference to that effect.[5] On December 9, 1977, after conducting a hearing on the matter, Bankruptcy Judge Moriarty granted the motion to convert Pacific Homes' Chapter XI proceeding into a Chapter X reorganization proceeding. On that same day, this Court executed a second order of reference, referring to Judge Moriarty "any and all proceedings, trials, actions, hearings, orders or any other matters which might require this Court to act in this matter pursuant to Chapter X of the Bankruptcy Act." [6]

1. Pacific Homes does business under the following names:

Asbury Pharmacy; Casa de Manana; Claremont Manor; Kingsley Manor; Pohai Nani; Wesley Palms; Sparr Convalescent Hospital; and La Jolla Convalescent Hospital.

These homes are located in California, Arizona, and Hawaii.

2. The financial difficulties of Pacific Homes and the various lawsuits involving Pacific Homes have received considerable media attention. E. g., Los Angeles Times, June 17, 1978, pt. II, at 11, col. 1; id., June 10, 1978, pt. II, at 10, col. 2; id., April 29, 1978, pt. II, at 1, col. 2; id., April 20, 1978, pt. II, at 8, col. 4; id., April 8, 1978, pt. I, at 30, col. 1; id., March 29, 1978, pt. I, at 21, col. 1; id., March 22, 1978, pt. II, at 3, col. 1; id., March 18, 1978, pt. I, at 34, col. 4; id., Feb. 18, 1978, pt. I, at 33, col. 1; id., Dec. 10, 1977, pt. I, at 32, col. 1; id., Dec. 3, 1977, pt. I, at 31, col. 1; id., Dec. 2, 1977, pt. I, at 28, col. 5; id., Nov. 20, 1977, pt. I, at 3, col. 5; id., Nov. 18, 1977, pt. II, at 1, col. 6; id., Nov. 9, 1977, pt. II, at 8, col. 1; id., Oct. 28, 1977, pt. II, at 3, col. 1; id., June 15, 1977, pt. II, at 3, col. 1; id., March 19, 1977, pt. I, at 20, col. 1; id., Feb. 19, 1977, pt. I, at 27, col. 1; id., Feb. 5, 1977, pt. I, at 21, col. 1; id., Dec. 25, 1976, pt. II, at 11, col. 1; id., Dec. 11, 1976, pt. I, at 35, col. 3; id., June 19, 1976, pt. I, at 29, col. 1; id., March 6, 1976, pt. I, at 25, col. 3.

United Methodist Church-related retirement homes in other states are also reportedly in financial trouble. Los Angeles Times, June 10, 1978, pt. II, at 10, col. 2.

3. See Local Rules of the Central District of California, rules 2(b), 200 et seq.

4. Local Rules of the Central District of California, rule 2(b). Rule 2(b) provides in full as follows:

Matters in bankruptcy, other than matters arising under Chapter X of the Bankruptcy Act, shall likewise be numbered consecutively upon the filing of the first document in each such proceeding. Assignments to a particular judge shall be made as directed by the judges, from time to time, to the end that over a period of time each judge shall be assigned substantially an equal amount of work. Matters arising under Chapter X of the Bankruptcy Act shall be separately assigned, and shall be assigned to a particular judge in such manner as the judges from time to time may direct, to the end that each judge shall be allocated substantially an equal amount of work.

5. This Order provided as follows:

1. That PACIFIC HOMES' Motion for an Order Converting the Proceedings to Chapter X and any other proceedings which may have to be held as a result of PACIFIC HOMES' Motion are hereby referred generally to Bankruptcy Judge James E. Moriarty.

2. In the event that said Motion is granted any further proceedings, trials, actions, hearing, orders, or any other matters which might require this Court to act in this matter pursuant to Chapter X of the Bankruptcy Act is also hereby generally referred to Bankruptcy Judge James E. Moriarty.

6. This Order provided as follows:

. . . . it is hereby
Ordered, that any and all proceedings, trials, actions, hearings, orders, or any other matters which might require this Court to act in this matter pursuant to Chapter X of the Bankruptcy Act be, and hereby are, generally referred to Bankruptcy Judge James E. Moriarty.

Bankruptcy Judge Moriarty has been proceeding in this massive, complex piece of bankruptcy litigation. On December 9, 1977, after granting the petition to convert the Chapter XI proceeding into a Chapter X proceeding, Bankruptcy Judge Moriarty appointed Richard E. Matthews, who had been the receiver in the Chapter XI proceeding, as Trustee of the Chapter X Estate of Pacific Homes. Since the conversion, Bankruptcy Judge Moriarty has supervised these difficult bankruptcy proceedings in an admirable fashion.[7]

On April 27, 1978, the Trustee filed a "Complaint for Negligence, Breach of Fiduciary Duties, Mismanagement, Waste, and Declaratory Relief (Indemnity)." This complaint named as defendants the United Methodist Church (hereinafter UMC), the General Council of Finance and Administration of the United Methodist Church (hereinafter GCFA), the General Board of Global Ministries of the United Methodist Church (hereinafter General Board), the Health and Welfare Division of the Board of Global Ministries of the United Methodist Church (hereinafter Health and Welfare Division), the Pacific Southwest Annual Conference of the United Methodist Church (hereinafter PSWAC), and 87 individuals who had served as either officers, directors, or agents of Pacific Homes. The complaint contains three causes of action. The first alleges that the individual defendants are liable for negligence, breach of fiduciary duties, mismanagement, and waste.[8] The second cause of action alleges that UMC, GCFA the General Board, and the Health & Welfare Division (hereinafter the Church defendants) are also liable for negligence, breach of fiduciary duties, mismanagement, and waste.[9] The third cause of action seeks declaratory relief.[10] The complaint seeks,

7. Supervision of this Chapter X proceeding has involved the management of the day-to-day affairs of this litigation, including controlling the receipts and disbursements of the estate's assets, appointing counsel for the Trustee, ensuring payment for the Trustee and his counsel, appointing various experts to aid the estate, including a marketing firm and insurance analysts, and numerous other matters.

8. More specifically, the allegations of this cause of action of the complaint focus primarily on Pacific Homes' practice of entering into "continuing care agreements" with senior citizens. These continuing care agreements are basically contracts by which a senior citizen would transfer money or property to Pacific Homes in exchange for Pacific Homes' agreement to furnish care to the senior citizen in one of its homes for a specified period of time. The complaint alleges that the defendants entered into such agreements without complying with applicable state laws regulating such practices, Cal. Welf. & Inst. Code § 16300 *et seq.*; that the defendants should have known that Pacific Homes could not fully perform its continuing care agreements; that the defendants wasted the funds collected from continuing care agreements and charitable contributions which should have been held in reserve or invested properly in order to meet Pacific Homes' obligations under its continuing care agreements; and that the defendants borrowed funds to cover current expenses with no reasonable expectation of gaining revenues sufficient to repay those funds. Complaint, ¶¶ 8A–8D. In addition, the complaint alleges that these individual defendants failed to disclose the true financial condition of Pacific Homes; continued to operate the business knowing that the losses would increase by doing so; allowed the assets of Pacific Homes to deteriorate; caused the deterioration of Pacific Homes' reputation; sold investments and assets at inopportune times and under disadvantageous circumstances; caused Pacific Homes to agree to provide care under terms not reasonably calculated in terms of costs; and gave benefits to UMC and its various subentities without obtaining assurances that UMC would share Pacific Homes' obligations. Complaint, ¶¶ 8E–8K.

9. More specifically, this cause of action focuses primarily on the allegation that the Board of Directors of Pacific Homes consisted in large part of directors, trustees, agents and employees of the Church defendants. Complaint, ¶ 11. The complaint alleges that these Church defendants controlled these members of the Board of Directors of Pacific Homes, referred to in the complaint as "controlled agents"; failed to supervise their management of Pacific Homes; aided and abetted in their unlawful activities; and conspired with them for their own benefit. Complaint, ¶ 19.

10. This cause of action seeks declaratory relief based upon the Trustee's allegations that Pacific Homes has breached its continuing care agreements by, inter alia, requiring residents of its convalescent homes to pay additional funds for services already covered by the continuing care agreements; that the defendants' conduct was the primary cause of these breaches of the continuing care agreements; that Pacific

on information and belief, damages in excess of fifty million dollars.[11]

On May 1, 1978, this Court executed another order of reference. This Order noted the filing of the Trustee's complaint, stated that the intent of the December 9, 1977, Order was to refer to Bankruptcy Judge Moriarty "all adversary proceedings and complaints filed or to be filed in this Chapter X case," and ordered, pursuant to Bankruptcy Rule 10–103, that all proceedings pertaining to this Trustee's complaint also be referred to Bankruptcy Judge Moriarty.[12]

Thereafter, the defendants objected, by motion, to the jurisdiction of the Bankruptcy judge-referee to hear any proceedings involving this Complaint.[13] On June 30, 1978, after full briefing by the parties and oral argument thereon, Bankruptcy Judge Moriarty, without deciding the question, invited the parties to raise the matter with this District Court by way of a motion to withdraw the orders of reference.

The defendants have now, in accordance with Bankruptcy Judge Moriarty's invitation, filed a motion before us to withdraw our Order of Reference of May 1, 1978.[14] The parties have fully briefed the important question of the scope of the authority of a District Court to refer, and the jurisdiction of a bankruptcy court to hear, plenary proceedings in a Chapter X proceeding. After considering the pleadings and memoranda filed by the parties, and after hearing oral argument on August 7, 1978, the Court hereby finds that it need not withdraw the May 1, 1978, order of reference and consequently denies the defendants' motion to withdraw that order of reference. In addition, the Court certifies this important question for interlocutory appeal under 28 U.S.C. § 1292(b).

Homes' conduct was only a secondary, derivative breach of the agreements; and that, therefore, Pacific Homes is entitled to a declaratory judgment that the defendants are obligated to indemnify Pacific Homes in the amount of the obligations of Pacific Homes to its residents. Complaint, ¶ 23A.

11. Complaint, ¶¶ 9, 20.
It should also be noted that this Complaint did not receive a new civil case number from the Clerk; that the Bankruptcy Court issued the summons; and that service of process was accomplished according to the bankruptcy rules.

12. In full, this Order provides as follows:
. . . it is hereby
ORDERED, that pursuant to Bankruptcy Rule 10–103, the aforesaid "Complaint for Negligence, Breach of Fiduciary Duties, Mismanagement, Waste and Declaratory Relief (Indemnity)," the adversary proceedings instituted by the filing of said Complaint, and all proceedings, trials, hearings, or any other matters pertaining to said Complaint and adversary proceedings be, and hereby are, referred to Bankruptcy Judge James E. Moriarty; and it is further
ORDERED that this Order shall in no manner limit the scope of the general reference to Bankruptcy Judge James E. Moriarty contained in the aforesaid "Order of Reference" of December 9, 1977.

13. The majority of the defendants who have appeared filed their motions before Bankruptcy Judge Moriarty on May 30, 1978. The remainder of the appearing defendants joined in these motions on June 12, 1978.

14. Defendants GCFA, D. Leslie Hole, and others have also moved the Court to withdraw the December 9, 1977 order of reference. The Court finds this motion to be without merit because the relevant rules specifically provide that the Court should refer the ordinary Chapter X proceeding to a bankruptcy judge. See Bankruptcy Act § 117, 11 U.S.C. § 517; Bankruptcy Rule 10–103(a)(1); Local Rules of the Central District of California, rule 217(f). Furthermore, withdrawal of the December 9, 1977 order of reference would interfere substantially with the important efforts of Bankruptcy Judge Moriarty in supervising the Chapter X proceeding and would also severely delay the conclusion of those proceedings. Therefore, the Court denies any and all motions made to withdraw the order of reference of December 9, 1977.

In addition, various defendants have filed various pretrial motions before Bankruptcy Judge Moriarty. For instance, defendant Harold Thumma continues to argue before this Court his pending motion to dismiss for lack of jurisdiction. The Court declines to rule on this or any other pretrial motion now pending and will confine itself in this decision to a ruling on the motion to withdraw the order of reference of May 1, 1978.

## II. DISCUSSION

The sole question presented by these motions is whether the bankruptcy judge-referee in a Chapter X reorganization proceeding possesses jurisdiction over a plenary[15] action brought by the Chapter X Trustee when the defendants[16] in the plenary action file timely[17] objections to the jurisdiction of the bankruptcy judge-referee.

Initially, the Court notes the absence of any clear, binding judicial precedent on this narrow legal issue. Indeed, these motions appear to raise a novel question of law. The parties have, however, advanced various interesting arguments in support of their respective positions. The Court now turns to address these arguments.

### A. Defendants' Arguments

#### 1. *Defendants' Jurisdiction Argument*

The defendants contend that while a bankruptcy judge-referee in a Chapter X proceeding has jurisdiction to hear a plenary suit in the absence of a timely objection by the defendants, a bankruptcy judge-referee in a Chapter X proceeding lacks jurisdiction over that plenary action if the defendants do raise a timely objection to the jurisdiction of the bankruptcy judge-refer-

ee. In support of this position, the defendants cite four cases, *MacDonald v. Plymouth County Trust Co.,* 286 U.S. 263, 52 S.Ct. 505, 76 L.Ed. 1093 (1932); *Weidhorn v. Levy,* 253 U.S. 268, 40 S.Ct. 534, 64 L.Ed. 898 (1920); *Goggin v. Consolidated Liquidating Corp.,* 190 F.2d 553 (9th Cir. 1951) (per curiam); *Morrison v. Rocco-Ferrera & Co.,* 554 F.2d 290 (6th Cir. 1977), and various provisions of Collier's treatise on bankruptcy law, 6 Collier on Bankruptcy, ¶ 3.13, at 506 (14th ed. 1978); 2A *id.,* ¶ 38.09, at 1432; 2 *id.,* ¶ 23.15[7].[18] Close, critical examination of these cited authorities is necessary for proper evaluation of this position.

In *Weidhorn v. Levy, supra,* the trustee in a straight bankruptcy action filed with the referee in bankruptcy a bill in equity against the brother of the bankrupt for a fraudulent conveyance. The bankrupt's brother objected to the referee's jurisdiction and the issue came before the Supreme Court.[19] After reviewing the decisions of the lower courts, the applicable statutes and General Orders, and previous lower court decisions on the issue, the Supreme Court concluded that:

under the language of the Bankruptcy Act and of the general orders in bank-

---

**15.** All parties agree here that the Trustee's Complaint is in the nature of a "plenary", as opposed to a "summary", proceeding. For further commentary on the plenary-summary distinction, see note 21 *infra.*

**16.** The Court need not express any views on the subject of the problems in a plenary action in which some defendants object to the jurisdiction of the bankruptcy judge-referee while others consent to the jurisdiction of the bankruptcy judge-referee following an order of reference. In this case, all defendants objected.

**17.** The Court expresses no opinion here with respect to what precisely would constitute a "timely" objection. In this case, the defendants objected almost immediately after service of the complaint on them to the jurisdiction of the bankruptcy judge-referee to hear the action. Thus, their objections are most certainly timely by any conceivable standard. In the *Morrison* case, discussed at length below, the Court of Appeals for the Sixth Circuit seemed to suggest that an objecting defendant must raise his objection in his initial responsive pleading. *See* 554 F.2d at 297.

The Court also notes that the Trustee has also filed a "Complaint To Recover Preferences and Fraudulent Conveyances" against defendant PSWAC. As to this complaint, filed on June 9, 1978, the Court executed another order of reference to Bankruptcy Judge Moriarty, dated June 9, 1978. Defendant PSWAC has not as yet objected to the jurisdiction of the bankruptcy judge-referee in this matter, although its time to respond to the complaint has apparently not yet run. Thus, the bankruptcy judge-referee retains jurisdiction over this complaint.

**18.** *See* Defendant PSWAC's Memorandum of Points and Authorities In Support of Motion To Withdraw Reference, at 7–9; Defendant Thumma's Memorandum of Points and Authorities In Support of Motion For Order Vacating Order of Reference, at 5.

**19.** The bankruptcy judge-referee denied the jurisdictional objections, the district court reversed the bankruptcy judge-referee, *In re Weidhorn,* 243 F. 756 (D.Mass.1917), and the Court of Appeals for the First Circuit reversed the district court, *In re Weidhorn,* 253 F. 28 (1st Cir. 1918).

ruptcy a referee, by virtue of a general reference under Order XII(1), has not jurisdiction over a plenary suit in equity brought by the trustee in bankruptcy against a third party to set aside a fraudulent transfer or conveyance under § 70e, and affecting property not in the custody or control of the court of bankruptcy. 253 U.S. at 274, 40 S.Ct. at 537.

In *MacDonald v. Plymouth County Trust Co., supra,* the trustee in bankruptcy had filed a petition with the referee to set aside a voidable preference under § 60(b) of the Bankruptcy Act and the respondent consented to have the issues proceed before the bankruptcy referee. In reversing the Court of Appeals for the First Circuit, which had ruled that the referee lacked jurisdiction notwithstanding the party's consent,[20] the Supreme Court found that, so long as all parties consented, the referee could try a plenary action. 286 U.S. at 266–67, 52 S.Ct. 505. In addition, the Court, citing *Weidhorn v. Levy,* stated that:

> In cases where the defendant made timely objections to a determination by the referee, it has been said that the referee is without power to hear the issues involved in a plenary suit, and that such a suit, if brought before him, must be dismissed for want of jurisdiction.

*Id.* at 266, 52 S.Ct. at 506.

In *Goggin v. Consolidated Liquidating Corp., supra,* the Court of Appeals for the Ninth Circuit, in a brief, two-paragraph per curiam decision, affirmed a District Court order holding that the parties who had objected to the referee's jurisdiction in a timely fashion in a plenary action were entitled to an adjudication of their rights by a District Court, since it was a plenary suit. 190 F.2d at 554.

The case of *Morrison v. Rocco-Ferrera & Co., supra,* is the most closely analogous case with respect to the legal arguments presented in this case. In *Morrison,* the Trustee in a Chapter X reorganization proceeding filed a complaint in the District Court for recovery of an account receivable. The defendant in that action filed an answer and counterclaim and then, after the Chapter X proceeding terminated and the corporation was declared bankrupt, challenged the jurisdiction of the bankruptcy judge-referee, who had received the matter under an order of reference, to hear the case. The bankruptcy judge-referee ruled that he had jurisdiction and the District Court affirmed. 409 F.Supp. 1364 (E.D. Mich.1975). On appeal, the Court of Appeals for the Sixth Circuit affirmed. In the pertinent section of its opinion, the Court of Appeals noted the distinction between "plenary" and "summary" jurisdiction,[21] restated the rule that in straight bankruptcy cases a bankruptcy judge-referee cannot exercise summary jurisdiction over a controversy in which the defendant is entitled to a plenary proceeding if the defendant has filed a timely objection,[22] and then suggested that this rule, developed in straight bankruptcy cases, applies with equal force in Chapter X reorganization proceedings as

**20.** After the judge-referee had ruled adversely to the respondent, he appealed to the district court on the ground that the judge-referee lacked jurisdiction. The district court affirmed the decision of the judge-referee on this issue. *In re Craig, Reed & Emerson, Inc.,* 46 F.2d 811 (D.Mass.1931). The Court of Appeals for the First Circuit then reversed. *Plymouth County Trust Co. v. MacDonald,* 53 F.2d 827 (1st Cir. 1931).

**21.** The Court stated as follows:

There has long been a distinction in straight bankruptcy between the "summary" jurisdiction of the bankruptcy court and the bankruptcy referee over "proceedings in bankruptcy," and the "plenary" jurisdiction of the United States District Courts and State courts over "independent suits." The summary-plenary distinction is used confusingly in bankruptcy decisions, sometimes to delineate jurisdiction in the sense of power to adjudicate conferred by statute, other times to define procedural rights, and, on occasion, to refer to both of these senses simultaneously. 554 F.2d at 296 (citations omitted).

**22.** In stating the rule in straight bankruptcy litigation, the Court quoted extensively, and with implicit approval, from Collier's treatise on bankruptcy law. *See* 2 Collier on Bankruptcy, ¶ 23.15[7] (14th ed. 1978); See also 6 *id.,* ¶ 3.13, at 506; 2A *id.,* ¶ 38.09, at 1432.

well.[23] See 554 F.2d 296–97. The Court of Appeals then stated that because the defendant failed to object to the jurisdiction of the bankruptcy judge-referee in his answer he "will not now be heard to complain that the bankruptcy judge was without jurisdiction to entertain the controversy pursuant to the reference from the District Court sitting as a reorganization court." *Id.* at 297.

Relying on these four decisions, and Collier's attempted formulation of a rule of law from them,[24] the defendants argue that the bankruptcy judge-referee loses jurisdiction over a plenary proceeding, even though it may have been properly referred to the bankruptcy judge-referee, once the defendants file timely objections to the jurisdiction of the bankruptcy judge-referee to hear the plenary action.

The plaintiff-trustee, on the other hand, while apparently conceding the summary-plenary distinction in straight bankruptcy cases,[25] raises several points in his attempt to demonstrate the inapplicability of that rule in a Chapter X setting. First, he accurately points out that the Supreme Court decided both *Weidhorn* and *MacDonald* be-

fore Congress enacted Chapter X of the Bankruptcy Act in 1938 and before the Supreme Court promulgated the Rules of Bankruptcy Procedure in 1975. Second, he points out that the Supreme Court interpreted different language in those decisions than the relevant statutory language applicable today. Third, he argues that the policies and background underlying Chapter X differ substantially from the nature of the policies and background underlying straight bankruptcy. Fourth, he argues that the Sixth Circuit's comments in *Morrison* are dicta.

▮ The plaintiff's arguments here do substantially undermine the defendants' position. While the fact that the Supreme Court did decide *Weidhorn* and *MacDonald*, the two cases most heavily relied upon by the defendants, before the enactment of Chapter X does not render them irrelevant but does demonstrate that they do not establish any rule as clear as the defendants would suggest.[26] In addition, the *Weidhorn* Court relied heavily on the statutory language of General Order 12 involved in that case, which does differ from the language of statutes pertinent here.[27] Moreover, the Supreme Court has indicated that Chapter

---

**23.** For this point, the Court cited three prior decisions of the Sixth Circuit. *In re International Leasing Corp.*, 391 F.2d 572 (6th Cir. 1968); *In re D.I.A. Sales Corp.*, 339 F.2d 175 (6th Cir. 1964); *In re Mt. Forest Fur Farms*, 122 F.2d 232 (6th Cir. 1941), *cert. denied*, 314 U.S. 701, 62 S.Ct. 480, 86 L.Ed. 561 (1942), *rehearing denied*, 315 U.S. 826, 62 S.Ct. 622, 86 L.Ed. 1222 (1942).

**24.** Collier states the general rule in the context of straight bankruptcy as follows:

the referee in bankruptcy is without power to hear the issues involved in a *plenary* suit where timely objection is made to such determination; therefore, he has no jurisdiction, without consent, to determine adverse claims to property claimed to belong to the bankrupt's estate which property, at the time of the institution of the proceeding in bankruptcy, was in the possession of a third person claiming more than a colorable interest therein.

2A Collier on Bankruptcy, ¶ 38.09, at 1432–33 (14th ed. 1978) (emphasis is original). In another location in the treatise, Collier extends this rule into the context of a Chapter X reorganization proceeding:

as in ordinary bankruptcy, the referee is without power to hear the issues involved in a *plenary* suit where timely objection is made.

6 *id.*, ¶ 3.13, at 506 (emphasis is original).

**25.** *See* Plaintiff's Consolidated Memorandum of Points and Authorities In Opposition To Defendants' Motion To Withdraw Reference, at 13, 33–35.

**26.** Defendant PSWAC put the matter as follows:

The question remaining is, does a Bankruptcy Judge have jurisdiction to hear a plenary [action] over the objection of the Defendants? The answer is simply, no.

Defendant PSWAC's Memorandum of Points and Authorities In Support of Motion To Withdraw Reference, at 6.

**27.** In *Weidhorn*, The Supreme Court interpreted General Order 12(1), which provided as follows:

The order referring a case to a referee shall name a day upon which the bankrupt shall attend before the referee; and from that day the bankrupt shall be subject to the orders of the court in all matters relating to his bank-

X proceedings are "distinctive and special proceedings." *Williams v. Austrian*, 331 U.S. 642, 661, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947). And while the Court of Appeals for the Sixth Circuit did state in *Morrison* that the general rule in straight bankruptcy should also apply in Chapter X proceedings, the cases cited by that court for that proposition offer, at best, weak authority for

> ruptcy, and may receive from the referee a protection against arrest, to continue until the final adjudication on his application for a discharge, unless suspended or vacated by order of the court. A copy of the order shall forthwith be sent by mail to the referee, or be delivered to him personally by the clerk or other officer of the court. And thereafter all the proceedings, except such as are required by the act or by these general orders to be had before the judge, shall be had before the referee.

See 172 U.S. 653, 657 (1898).

In this case, the relevant, or possibly relevant, language of the statute and rules is found in § 117 of the Bankruptcy Act, 11 U.S.C. § 517 (quoted in section II B 2 of this opinion) and rule 10–103(a) of the Rules of Bankruptcy Procedure (quoted in notes 41, 44 *infra*).

Comparison of the General Order with the current statute and rule reflects a marked difference in the language of the applicable provisions. The only similarity between the General Order and rule 10–103 is that the second sentence of rule 10–103(a) (all proceedings, following a reference, shall be had before the referee, with certain specified exceptions) is based on the General Order.

See *Advisory Committee Note to Rule 10–103* of the Rules on Bankruptcy Procedure, *reprinted in* 13A Collier on Bankruptcy, ¶ 10–103.01 (14th ed. 1978).

**28.** As noted above, the Court of Appeals cited three cases for this point. *See* note 23 *supra*. In the *International Leasing Corporation* case, 391 F.2d 572 (6th Cir. 1968), the Court of Appeals for the Sixth Circuit dealt with the scope of a bankruptcy court's summary power in a Chapter X proceeding. Specifically, the Court had to decide, since a bankruptcy court has summary jurisdiction over the property in the debtor's possession, whether the debtor had constructive possession of certain automobiles. The opinion of the Court did not evaluate the similarities and differences between Chapter X and straight bankruptcy. Thus, this case is not relevant to the point for which the *Morrison* court cited it.

Similarly, in the *Mt. Forest Fur Farms* case, 122 F.2d 232 (6th Cir. 1941), *cert. denied*, 314 U.S. 701, 62 S.Ct. 480, 86 L.Ed. 561 (1942), *rehearing denied*, 315 U.S. 826, 62 S.Ct. 622, 86 L.Ed. 1222 (1942), the Court of Appeals dealt with the problems of the summary jurisdiction

such a statement.[28] Finally, the statements found in Collier's treatise, frequently quoted in the defendants' moving papers, are virtually without any support in the context of a Chapter X proceeding.[29] Therefore, the Court, while impressed with the defendants' arguments, does not find them convincing enough to mandate a ruling in defendants' favor.

> of a bankruptcy court and did not detail the relationship between Chapter X and the other provisions of the bankruptcy laws.

The Court of Appeals for the Sixth Circuit did discuss the relationship between Chapter X and straight bankruptcy to some extent in the *D.I.A. Sales Corporation* case, 339 F.2d 175 (6th Cir. 1964). In that case, the Court held that a referee in a Chapter X proceeding could, under a broad order of reference similar to the one executed in this case, grant a petition for reclamation of certain merchandise and approve an indemnity agreement. The Court based its finding on the statutes specifying that provisions of straight bankruptcy apply in Chapter X unless in conflict with Chapter X, 11 U.S.C. § 502, and provisions of straight bankruptcy authorizing the exercise of such powers by the bankruptcy referee. See 339 F.2d at 179. Thus, at least implicitly, the Court did suggest in this case that Chapter X should be treated in much the same way as straight bankruptcy. Nevertheless, two points should be made. First, the defendant in this case limited his objections to the portion of § 117 reversing certain matters to the district court judge. In using this case to suggest that Chapter X proceedings should be treated just as straight bankruptcy, the Court in *Morrison* may have stretched what really was a holding based on statutory language alone in *D.I.A.* Second, the Court in *D.I.A.* did permit the referee to assert his jurisdiction over the problems before him. If the Court had been faced with the type of objection as currently faces this Court, perhaps that Court would have permitted the referee to adjudicate that matter as well.

**29.** As discussed above, the Collier treatise extends the general rule in straight bankruptcy that the referee lacks power to adjudicate plenary actions over the defendants' objections to Chapter X proceedings. 6 Collier on Bankruptcy, ¶ 3.13, at 506 (quoted at note 24 *supra*). As authority for the extension of the rule into the context of a Chapter X proceeding, however, Collier cites only the *Weidhorn* case and then refers to other provisions of the treatise which in turn cite *Weidhorn* and *MacDonald*. Since these authorities do not support such a broad rule, Collier's treatise appears to have overextended the cases in support of a rule that indeed may not exist in Chapter X.

### 2. Defendants' Constitutional and Policy Arguments

 Defendants also argue that constitutional considerations preclude the Court from referring this action to the bankruptcy judge-referee. They argue essentially that permitting a bankruptcy judge-referee to hear this action would effectively make him an Article III court, rather than an Article I body. This argument fails for two reasons. First, an Article III District Court Judge will, in this type of situation, always retain authority over the case and is able to withdraw the order of reference at any time. Second, the defendants do not dispute the fact that they can consent to the jurisdiction of the bankruptcy judge-referee over a plenary action; in that situation, they cannot argue that the bankruptcy judge-referee is constitutionally precluded from proceeding.

 The defendants also raise a policy objection to the concept of a bankruptcy judge-referee hearing a plenary suit. They argue that the reference of this action to him will necessarily place him in a situation in which he has conflicting interests because he has the duty to oversee the administration of the estate, has himself appointed the trustee for the estate, and will hear contested matters involving the estate and the trustee as parties. This is utter nonsense. The trustee is just as impartial as the bankruptcy judge-referee,[30] and indeed, the administration of the bankruptcy estate is in and of itself a completely impartial and judicially neutral undertaking.

### B. Plaintiff's Arguments

Plaintiff argues that the May 1, 1978 order of reference need not be withdrawn and, in support of that argument, relies primarily on the statutory language of Chapter X. Specifically, plaintiff relies on §§ 115 and 117 of the Bankruptcy Act, 11 U.S.C. §§ 515, 517, and rule 10–103 of the Rules of Bankruptcy Procedure.

#### 1. Plaintiff's Section 115 Argument

Section 115 of the Bankruptcy Act, a provision found in Chapter X, provides as follows:

> Upon the approval of a petition, the court shall have and may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon it, exercise all the powers, not inconsistent with the provisions of this chapter, which a court of the United States would have if it had appointed a receiver in equity of the property of the debtor on the ground of insolvency or inability to meet its debts as they mature.

11 U.S.C. § 515.

Plaintiff argues that the term "the court," as used in this section, includes both the District Court Judge and the Bankruptcy judge-referee under Bankruptcy Act § 1(9), 11 U.S.C. § 1(9),[31] and that this

---

**30.** *See* Bankruptcy Act, §§ 156, 158, 11 U.S.C. §§ 556, 558; Rules of Bankruptcy Procedure, rule 10–202.

**31.** Section 1(9) defines "court" as "the judge or referee of the court of bankruptcy in which the proceedings are pending." 11 U.S.C. § 1(9). In addition, the Act contains other important and relevant definitions. It defines "courts of bankruptcy" to include "the United States district courts and the district courts of the Territories and possessions to which this title is or may hereafter be applicable," *id.* § 1(10), defines "judge" to mean "a judge of a court of bankruptcy, not including the referee," *id.* § 1(20), and defines "referee" to mean "the referee who has jurisdiction of the case or to whom the case has been referred or anyone acting in his stead," *id.* § 1(26).

The powers of a referee are defined in § 38 of the Act as follows:

> Referees are hereby invested, subject always to a review by the judge, with jurisdiction to (1) consider all petitions referred to them and make the adjudications or dismiss the petitions; (2) exercise the powers vested in courts of bankruptcy for the administering of oaths to and the examination of persons as witnesses and for requiring the production of documents in proceedings before them, except the power of commitment; (3) exercise the powers of the judge for the taking possession and releasing of the property of the bankrupt in the event of the issuance by the clerk of a certificate showing the absence of a judge from the judicial district, or the division of the district, or showing his sickness or inability to act; (4) grant, deny, or revoke

section, conferring on "the court" all the jurisdiction that could be exercised in a federal equity receivership, authorizes jurisdiction over plenary proceedings such as the instant case.

■ While § 115 may be said to expand the jurisdiction of the bankruptcy judge-referee, see *In re Cuyahoga Finance Co.,* 136 F.2d 18, 20 (6th Cir. 1943); *Warner v. Brady,* 115 F.2d 89, 94–95 (4th Cir. 1940),[32] plaintiff has cited no cases in which a court used § 115 as the basis for the jurisdiction of a judge-referee in a case similar to this. In fact, the most closely analogous case appears to hold to the contrary.[33] Thus, this Court is reluctant to assert that § 115 authorizes a bankruptcy judge-referee to hear this plenary action, which seeks fifty million dollars in damages, on the basis of his supposed federal equity receivership jurisdiction and will not so hold.

### 2. *Plaintiff's Section 117 Argument*

Section 117 of the Bankruptcy Act, also part of Chapter X, provides as follows:

The judge may, at any stage of a proceeding under this chapter, refer the proceeding to a referee in bankruptcy to hear and determine any and all matters not reserved to the judge by the provisions of this chapter, or to a referee as special master, to hear and report generally or upon specified matters. Only under special circumstances shall references be made to a special master who is not a referee. The appointment of a receiver in a proceeding under this chapter shall be by the judge.

11 U.S.C. § 517. Plaintiff argues that his Complaint is a "proceeding under this chapter," that no other provision of Chapter X reserves this matter exclusively to a District Court Judge, and that therefore the Court could refer the matter to Bankruptcy Judge Moriarty.

In support of his argument that the term "proceeding" used in § 117 includes plenary actions, the plaintiff cites *Williams v. Austrian,* 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947). In *Williams,* the Supreme Court stated that the term "proceedings under this Chapter" used in Chapter X "must extend to plenary suits." *Id.* at 659 n.42, 67 S.Ct. at 1451.[34] In opposition to this part of the plaintiff's argument, defendants make three arguments.

■ First, defendant PSWAC argues that the term "proceeding" used in § 117 is

---

discharges, determine the dischargeability of debts, and render judgments thereon; (5) confirm or refuse to confirm arrangements or wage-earner plans, or set aside the confirmation of arrangements or wage-earner plans and reinstate the proceedings or cases; (6) *perform such of the duties as are by this title conferred on courts of bankruptcy,* including those incidental to ancillary jurisdiction, and as shall be prescribed by rules or orders of the courts of bankruptcy of their respective districts, except as herein otherwise provided; and (7) during the examination of the bankrupt, or during other proceedings, authorize the employment of stenographers for reporting and transcribing proceedings at such reasonable expense to the estate as the court may fix.

11 U.S.C. § 66.

**32.** The Supreme Court has faced this question, but declined to rule on it. *Williams v. Austrian,* 331 U.S. 642, 659–60, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947).

**33.** *See Sylvan Beach, Inc. v. Koch,* 140 F.2d 852, 861 (8th Cir. 1944). *See generally* 6 Collier on Bankruptcy ¶ 3.18 (14th ed. 1978).

**34.** The facts of *Williams v. Austrian* are similar to the facts of this case. In *Williams,* Trustees in a Chapter X reorganization proceeding in the Eastern District of Virginia sued officers and directors of the debtor corporation and other parties in the Southern District of New York, alleging *misappropriation of corporate assets* and seeking an accounting and other relief. The district court in New York dismissed the case, finding that it lacked jurisdiction in that diversity was not present and that no other basis for jurisdiction existed. 67 F.Supp. 223 (S.D.N.Y.1946). The Court of Appeals for the Second Circuit reversed, finding that § 2 of the Bankruptcy Act provided a basis of jurisdiction. 159 F.2d 67 (2d Cir. 1946). The Supreme Court affirmed, holding that § 102 of the Act, part of Chapter X, 11 U.S.C. § 502, gives all federal district courts jurisdiction under § 2 over plenary actions brought by a Chapter X Trustee even though diversity or the other possible grounds for federal jurisdiction may be lacking.

the same term which the Supreme Court interpreted in the *MacDonald* and *Weidhorn* cases in denying the bankruptcy referee power to adjudicate plenary suits without consent of the defendants and further argues that the Advisory Committee's Note to rule 10–103 of the Rules of Bankruptcy Procedure supports this view.[35] With respect to the attempt to distinguish the *Williams* footnote by referring to *MacDonald* and *Weidhorn,* however, this Court finds that the specific language of the *Williams* footnote quoted above, being both later in time than the two earlier decisions and set specifically in the context of Chapter X, unlike those two earlier decisions, is controlling. With respect to the argument that the Advisory Committee Note to rule 10–103 [36] supports the defendants' view, this Court initially notes that the Court may disregard these comments when they conflict with the Bankruptcy Act, *Young Properties Corp. v. United Equity Corp.,* 534 F.2d 847, 854 (9th Cir. 1976), and finds that the Note does not in any way alter the language of § 117 as interpreted by the Supreme Court in *Williams.*

Second, defendant General Board and defendant Health & Welfare Division argue

that the Supreme Court in *Williams* extended this interpretation of "proceeding" only to §§ 101 and 102 of the Act, 11 U.S.C. §§ 501, 502, and not to § 117.[37] With respect to this argument, the Court notes that the Court in *Williams* extended the interpretation of the phrase "proceedings *under this chapter*" to include plenary suits. 331 U.S. at 659 n.42, 67 S.Ct. 1443. (emphasis added), and thus did indeed define "proceedings" as used in § 117 because §§ 101, 102, and 117 are all part of Chapter X of the Bankruptcy Act, as amended.

■ Third, defendant PSWAC argues that rule 10–103(a) of the Rules of Bankruptcy Procedure supersedes § 117.[38] Initially, the Court notes the absence of any controlling authority on this particular point.[39] In deciding the point, however, the Court notes that the Court of Appeals for the Sixth Circuit in the *Morrison* case did not mention rule 10–103 and confined itself to discussion of the applicability of § 117. See 554 F.2d at 295–98. This evidences to the Court the fact that § 117 has not been superseded by rule 10–103 and that § 117 is the key provision here. Thus, this objection by the defendants also lacks merit.

**35.** *See* Memorandum of Points and Authorities In Support of Defendant PSWAC's Motion to Withdraw Reference, at 12–14; Defendant PSWAC's Reply to Opposition to Motion to Withdraw Reference, at 4.

**36.** The Advisory Committee Notes states: "The second sentence of subdivision (a) [of rule 10–103] is adapted from General Order 12(1)." Advisory Committee Note to Rule 10–103, *reprinted in* 13A Collier on Bankruptcy, ¶ 10–103.01, at 10–1–3–2 to 10–103–3 (14th ed. 1978). General Order 12(1) is the provision interpreted by the Supreme Court in *Weidhorn v. Levy.*

**37.** See Defendant General Board and Defendant Health & Welfare Division's Memorandum of Points and Authorities In Reply to Plaintiff's Consolidated Memorandum of Points and Authorities In Opposition To Defendants' Motion To Withdraw Reference, at 7–8.

**38.** See Defendant PSWAC's Reply to Opposition to Motion To Withdraw Reference, at 4.

**39.** The statute authorizing the promulgation of the Bankruptcy Rules could perhaps be the starting point for a detailed analysis of the

problem. In pertinent part, the statute provides:

> The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure under the Bankruptcy Act.
> Such rules shall not abridge, enlarge, or modify any substantive right.

> . . . . .

> All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

28 U.S.C. § 2075. Courts which have interpreted this provision must begin with a strong presumption that these rules are properly enacted and do not enlarge, abridge, or modify any substantive right. *In re Mobile Steel Co.,* 563 F.2d 692 (5th Cir. 1977); *In re Wall,* 403 F.Supp. 357 (E.D.Ark.1975).
The Court also notes that Collier's treatise suggests that the rule supplants the statute "in its entirety," at least with respect to the district court's ability to appoint special masters under Chapter X. *See* 6 Collier on Bankruptcy, ¶ 3.35[2] (14th Ed. 1978).

■ It is clear that none of the defendants' arguments rebut the plaintiff's point that a plenary action must be considered a "proceeding" under Chapter X. In addition, in the *Morrison* decision, the Court of Appeals for the Sixth Circuit relied upon the *Williams* footnote and did find that the action involved there was indeed a "proceeding" within the meaning of § 117. 554 F.2d at 297. Therefore, under the precedent of the *Williams* footnote quoted above and the decision in *Morrison,* the Court finds that the Trustee's Complaint, although a plenary action in nature, is a "proceeding" within the scope of § 117 of the Bankruptcy Act.

■ Plaintiff then argues that no provision of Chapter X exclusively reserves the decision on this matter to a District Court Judge. Plaintiff notes that none of the provisions of Chapter X expressly reserving matters for the District Court Judge[40] apply to this case and the defendants do not point to any specific provision reserving this type of matter to the District Court Judge. Therefore, the Court must and does find that no provision of Chapter X exclusively reserves this matter to a District Court Judge.

■ This Court therefore agrees with the plaintiff that § 117 authorizes a referral of this Complaint. Moreover, this rule is sound because it enables the Trustee to gather all the potential assets of the debtor together before the bankruptcy judge-referee who is more intimately familiar with the affairs of the debtor than a District Court Judge and better able to resolve these affairs quickly. Accordingly, the Court finds that § 117 authorized it to refer this Complaint to the bankruptcy judge-referee because the complaint must be considered a "proceeding" within the meaning of § 117 and because no express provision of Chapter X prohibits such a reference.

### 3. *Plaintiff's Rule 10–103 Argument*

Plaintiff also suggests that rule 10–103(a) of the Rules of Bankruptcy Procedure supports authorization of the order of reference to the bankruptcy judge-referee. Rule 10–103(a) contains two subsections, both of which must be considered.

Rule 10–103(a)(1) provides that, if a local rule of the district court so provides, the Clerk shall, with certain exceptions, forthwith refer to a bankruptcy judge-referee a "petition" filed under Chapter X.[41] While this district has such a local rule,[42] this rule is limited to cover "petitions" proposing a plan or reorganization under Chapter X and is inapplicable to the type of action filed here by the Trustee.[43] Therefore, rule 10–103(a)(1) is inapplicable to this case.

**40.** *E. g.,* § 116 of the Bankruptcy Act, 11 U.S.C. § 516.

**41.** *(a) Reference.* (1) On the filing of a petition, if a local rule so provides, the clerk shall refer the case forthwith to a referee or to more than one referee concurrently as bankruptcy judge or judges. Thereafter all proceedings in the case shall be before the referee except as otherwise provided by subdivision (b) of this rule, by Bankruptcy Rule 920, by § 2a(15) of the Act when a complaint seeks an injunction to restrain a court, by § 43c of the Act when the office of the referee is vacant, and by the provisions in the Act and Part VIII of the Bankruptcy Rules governing appeals from judgments of the referee.

**42.** Local Rules of the Central District of California, rule 217(f). The rule provides as follows:

(f) All petitions filed under Chapter X of the Bankruptcy Act, pursuant to Section 117 of the Bankruptcy Act, shall as of course and forthwith be referred by the clerk to a referee in bankruptcy of this court to hear and determine any and all matters not reserved to the judge by the provisions of said chapter.

**43.** A "petition" is defined in Chapter X as "a petition filed under this chapter by a debtor, creditors, or indenture trustee proposing that a plan of reorganization be effected." Bankruptcy Act § 106(9), 11 U.S.C. § 506(9). This definition is incorporated by the Chapter X Bankruptcy Rules, rule 10–901(1).

In this case, the Trustee's "Complaint for Negligence, Breach of Fiduciary Duties, Mismanagement, Waste, and Declaratory Relief (Indemnity)" seeks damages from 92 individual and corporate defendants as described above. It does not propose a plan of reorganization and therefore cannot be considered a "petition" within the meaning of Chapter X.

Rule 10–103(a)(2) provides that, in the absence of a local rule automatically referring Chapter X "cases" to a bankruptcy judge-referee, the clerk should assign the Chapter X "case" to a District Court Judge who may then refer the case to a bankruptcy judge-referee for any specified purpose.[44] The language of this subsection does not limit references to "petitions," but rather uses the term "case" which, as used in the Rules of Bankruptcy Procedure, encompasses the Trustee's Complaint.[45] Therefore, this subsection of the rule, if not invalid as a modification of a substantive right,[46] provides the Court with additional authority supporting the propriety of the May 1, 1978 order of reference.

C. Conclusion

After reviewing all the authorities cited by the plaintiff-trustee and the defendants and other applicable principles of law, and after considering all the arguments advanced by the parties in support of their respective positions, the Court decides that the plaintiff's arguments are convincing. Therefore, the Court finds that § 117, 11 U.S.C. § 517, authorizes the Court to refer to a bankruptcy judge-referee a plenary action filed by the trustee in a Chapter X proceeding, despite the objections of the defendants named in the complaint.

It follows that this District Court must and does deny defendants' motion to withdraw the reference of May 1, 1978.

III. CERTIFICATION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Although the parties have not extensively briefed the issue of whether permissive interlocutory appeal would be appropriate in this case, the Trustee did mention it in his pleadings, Bankruptcy Judge-Referee Moriarty did discuss it with the parties, and this Court did raise and discuss the issue with the parties at the oral hearing on these motions. This section of this Decision and Order will examine the possibility of a permissive interlocutory appeal.

The statute authorizing permissive interlocutory appeals provides as follows:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). Thus, under this section, in order to certify the immediate appeal of an order, this Court must find:

(1) the order involves a controlling question of law;

(2) substantial ground for difference of opinion exists on this question of law; and

(3) an immediate appeal might materially advance the ultimate termination of the litigation.

**44.** (2) If a local rule does not provide for automatic reference of a Chapter X case by the clerk, the case shall be assigned to a district judge, who may act himself or may, at any time during its pendency, refer the case to a referee or to more than one referee concurrently as bankruptcy judge or judges generally or for any specified purpose.

**45.** The term "case" is not defined in either the definitional section of Chapter X, Bankruptcy Act § 106, 11 U.S.C. § 506, or in the Act's general definition section, Bankruptcy Act § 1,

11 U.S.C. § 1. Under the Rules of Bankruptcy Procedure, however, the term "case" is used in its widest functional sense and refers to the entire legal action in bankruptcy. *See* 12 Collier on Bankruptcy, ¶ 101.03[2] (14th ed. 1978). *See also* Advisory Committee Note to Rule 101 of the Rules of Bankruptcy Procedure, *reprinted in* 12 Collier on Bankruptcy, ¶ 101.01 (14th ed. 1978).

**46.** *See* note 39 *supra.*

*See generally Arthur Young & Co. v. United States District Court,* 549 F.2d 686, 697–98 (9th Cir. 1977); *Green v. Occidental Petroleum Corp.,* 541 F.2d 1335, 1338 (9th Cir. 1976) (per curiam); *Nickert v. Puget Sound Tug & Barge Co.,* 486 F.2d 1039 (9th Cir. 1973); *Molybdenum Corp. v. Kasey,* 279 F.2d 216 (9th Cir. 1960) (per curiam); 9 Moore's Federal Practice, ¶ 110.22[2]; 16 C. Wright & A. Miller, Federal Practice and Procedure, § 3930 (1977).

In this case, analysis of these three factors leads the Court to conclude that the question presented by the instant motions—whether a bankruptcy judge-referee acting under an order of reference in a Chapter X proceeding has jurisdiction over a plenary action when the defendants have filed timely objections to the jurisdiction of the bankruptcy judge-referee—should be certified to the Court of Appeals for immediate interlocutory appeal.

1. Order Involves a Controlling Question of Law

 This requirement is met in this case for the following reasons: the Court is issuing an order; this order solely involves a question of law and does not involve the resolution of disputed facts; the issue, being a question of law, is ripe for appellate review; and the question raised is controlling in that its resolution will have a substantial impact on the entire course of the litigation.

2. Substantial Ground for Difference of Opinion Exists

 This requirement is easily met in this case because the motions raise a novel question of law and both parties have raised excellent, forceful arguments in support of their respective positions. The Court does not doubt the wisdom of its own judgment on this motion, but recognizes that the importance of the issue necessitates a more final ruling.

3. Appeal Might Materially Advance the Ultimate Termination of the Litigation

Since the Court has ruled that it will not withdraw the May 1, 1978 order of reference, interlocutory appeal under this section might certainly advance the ultimate termination of the litigation. If the Court of Appeals were to reverse this ruling after the bankruptcy judge-referee has tried this case, then the parties would be forced to retry the case, estimated to take six months to a year for preparation and trial time, before a District Court Judge. If the Court of Appeals were to accept and rule on this appeal immediately, however, then the parties and the bankruptcy judge-referee would not have to face the possibility of a lengthy, futile effort.

▪ Thus, because all the necessary factors found in § 1292(b) have been found to exist, the Court finds that the issue raised by these motions is appropriate for immediate interlocutory appeal under § 1292(b) and so orders. The defendants should move the Court of Appeals to hear the appeal within the ten day period specified in the statute [47] and the Court of Appeals will hopefully, in its discretion, accept the appeal.

The Court does, under § 1292(b), stay any trial or hearing on the merits pending the decision by the Court of Appeals on the request for interlocutory appeal. The Court does not, however, stay discovery in this case, because it wishes the litigation to proceed as far as possible, so long as no party's rights are irreparably damaged.

### ORDER

Pursuant to the above decision, findings and conclusions, it is hereby ordered as follows:

1. That the defendants' motions to withdraw the May 1, 1978 Order of Reference are denied;

2. That the order denying these motions be certified for immediate interlocutory appeal;

---

47. *See also* Fed.R.App.P. 5.

3. That the Clerk of Court forthwith file this Decision and Order, and serve copies thereof upon all parties.herein through their respective counsel of record, as well as upon Bankruptcy Judge-Referee, the Honorable James E. Moriarty.